JOSEPH HUDNALL *et al.*

*v.*

O. M. D. HAM *et al.*

Opinion filed February 14, 1898—Rehearing denied April 7, 1898.

1. STATUTES—*liberal construction will be adopted to bring provision of statute within title.*  A liberal construction will be adopted in determining whether a provision of a statute is embraced within the title of the act, and unless it contains matter incongruous, and having no proper connection with the title, it will not be held void, as not embraced therein.

2. WILLS—*rule that marriage of testator revokes will does not owe its existence to statute.*  The rule that subsequent marriage operates to revoke the will of a testator when such will makes no provision for such marriage, does not in this State, where the husband and wife are heirs to each other, owe its existence to the statute, (Rev. Stat. 1874, p. 419, sec. 10,) but was a recognized rule of the common law prior to the statute.

3. DESCENT—*technical meaning of term "descent."*  The term "descent," in its technical sense, denotes the transmission of real es-

tate, or interest therein, on the death of the owner intestate, to some person by inheritance, and, as so used, is distinguishable from transmission by devise, which is technically by purchase, and from the transmission of personal property, which is governed by the rules of distribution.

4. SAME—*meaning of the term "descent," as used in the statutes.* The term "descent," as used in the act in regard to the descent of property (Rev. Stat. 1874, p. 417,) and in the other Illinois statutes touching upon the descent of property, includes the course of transmission, by operation of law, of both real and personal property where the owner dies intestate, or his estate or any part thereof is deemed and taken as intestate estate.

5. CONSTITUTIONAL LAW—*provision that testator's marriage revokes will is constitutional.* The provision of section 10 of the act on descent, (Rev. Stat. 1874, p. 419,) that "a marriage shall be deemed a revocation of a prior will," is in effect a declaration that in such an event, so far as the will is concerned, the estate shall be deemed as intestate estate, is constitutional and valid, and is properly embraced in the title "An act in regard to the descent of property."

6. CONTRACTS—*one relying on executed ante-nuptial contract need not show the wife's "full knowledge."* A bill to set aside the probate of a will on the ground of its revocation by the testator's subsequent marriage, which bill sets up an *executed* ante-nuptial contract, under which the widow accepted a certain sum in lieu of all her rights in the estate, need not aver facts showing that the contract was entered into by her with full knowledge of the extent of the testator's property.

7. EXECUTORS AND ADMINISTRATORS—*when act of executor is valid though will is afterward annulled.* Payment by one acting as executor, to the widow, of a sum specified in an ante-nuptial contract as in lieu of her claims on the estate, in accordance with the testator's directions in his will, will be valid, even though the probate of the will should be afterward set aside and the will annulled, as the act is one which any executor or administrator would be required to do in due course of administration.

WRIT OF ERROR to the Circuit Court of Jefferson county; the Hon. E. D. YOUNGBLOOD, Judge, presiding.

F. G. BLOOD, SIMS & COVINGTON, and FORMAN & WATTS, for plaintiffs in error:

The Statute of Descent expressly provides that subsequent marriage shall be deemed a revocation of a prior will. Rev. Stat. sec. 10, p. 419.

Ignorance of law in this respect will not change the rule. *Crum* v. *Sawyer*, 132 Ill. 443.

There is a distinction between contracts of an executory character and those which are fully executed. In the latter case there can be no rescission unless tainted by actual fraud. *Beebe* v. *Swartwout*, 3 Gilm. 162.

All proper acts of an executor *de son tort* are binding if the rightful executor or administrator would have been bound to do likewise in due course of administration. 7 Am. & Eng. Ency. of Law, 189; Williams on Executors, (7th Eng. ed.) 314; Schouler on Executors, sec. 193; *Gay* v. *Lanle*, 32 Miss. 309; *Giles* v. *Churchill*, 5 N. H. 341; *Pickering* v. *Colman*, 12 id. 148.

Every presumption is in favor of the validity of a statute, and every reasonable doubt must be resolved in favor of its constitutionality. The courts will never declare a statute void except in a clear case. *People* v. *Nelson*, 133 Ill. 565; *People* v. *Hazelwood*, 116 id. 316.

The generality of a title is not objectionable so long as it is not made to cover legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. *People* v. *Nelson*, 133 Ill. 565.

Long acquiescence in the constitutionality of an act, in respect of its title, is entitled to great weight in determining the sufficiency of the title. *Continental Imp. Co.* v. *Phelps*, 47 Mich. 299; Cooley's Const. Lim. (6th ed.) 81; *Stuart* v. *Laird*, 1 Cranch, 299; *Railroad Co.* v. *Mills*, 85 Mich. 646; *Martin* v. *Hunter*, 1 Wheat. 351; *Cohens* v. *Virginia*, 6 id. 264; *Bank* v. *Halstead*, 10 id. 51; *Westinghaus* v. *People*, 44 Mich. 265; *People* v. *Hammond*, 13 id. 256; *Frey* v. *Michie*, 68 id. 323; *People* v. *Goodwin*, 22 id. 500.

C. H. PATTON, for defendants in error:

"Estates by descent" and "estates by purchase" have no similarity in their incidents, conditions or origin. 2 Blackstone's Com. 243.

Title by descent is the title which one person, upon the death of another, acquires in the real estate of the latter as his heir-at-law. It was one of the principles of the feudal system that on the death of the tenant in fee the land should descend, and not ascend, hence the title by inheritance is in all cases called "descent." 1 Bouvier's Dic. 514.

Descent, or hereditary succession, is the title whereby a man, on the death of his ancestor, acquires his estate by right of representation, as his heir-at-law. 2 Blackstone's Com. 201.

In English jurisprudence a will is regarded as a conveyance. It is an authenticated instrument conveying an estate but to take effect in the future, and it is a title by purchase, because the grantee may decline the grant. But not so an estate by inheritance or by descent. The laws of descent operate without any agency of man, but the law of wills is wholly the agency of man. 2 Blackstone's Com. 286.

Title by descent and title by purchase have not the slightest similarity. One cannot be germane to the other and cannot both be placed in one chapter of the statutes of the State, because the constitution has forbidden it. Const. of 1870, sec. 13, art. 4.

The rule of the common law was, that marriage and birth of issue only presumptively revoked a prior will. *Tyler* v. *Tyler*, 19 Ill. 154; *McAnnulty* v. *McAnnulty*, 120 id. 33; 1 Jarman on Wills, 272.

An agreement to make or not to make a certain disposition of property, by will or otherwise, may be specifically enforced in equity if based upon a valuable consideration. *Green* v. *Broyles*, 3 Humph. 167; *Maddox* v. *Rowe*, 23 Ga. 431; *Frisby* v. *Parkhurst*, 29 Md. 58; *Gupton* v. *Gupton*, 47 Mo. 37; *Carmichael* v. *Carmichael*, 72 Mich. 76; *Bollman* v. *Overall*, 80 Ala. 451; *Taylor* v. *Mitchell*, 87 Pa. St. 518; *Sharkey* v. *McDermott*, 91 Mo. 647; *Wright* v. *Tinsley*, 30 id. 389; *Manning* v. *Pippin*, 80 Ala. 357.

GEORGE W. WALL, also for defendants in error.

WILLIAM H. GREEN, and C. S. CONGER, for defendant in error Mary E. Taylor:

Parties to an ante-nuptial contract occupy a confidential relation toward each other. While they may lawfully contract with each other where there is full knowledge of all that materially affects the contract, yet where the provision secured for the intended wife is disproportionate to the means of the intended husband it raises the presumption of designed concealment, and throws the burden upon those claiming in his right, to prove that there was full knowledge on her part of all that materially affected the contract. *Taylor* v. *Taylor*, 144 Ill. 445; *Achilles* v. *Achilles*, 151 id. 136; *Cleere* v. *Cleere*, 82 Ala. 588.

Although a widow may elect under a will, she is not concluded by it, if made in ignorance of circumstances calculated to influence her choice. *Watson* v. *Watson*, 128 Mass. 152; *Reaves* v. *Garrett's Admr.* 34 Ala. 562.

Even though a widow makes an election and receives the property under the will, still, if she was in ignorance of the amount of her husband's property at the time she is not bound thereby. *United States* v. *Duncan*, 4 McLean, 99; *Dabney* v. *Bailey*, 42 Ga. 521.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiffs in error filed their bill in chancery, alleging that on October 2, 1890, Jeremiah Taylor executed his last will and testament, devising and bequeathing his real and personal estate to Orlando M. D. Ham and others, who were made defendants; that afterwards, on November 28, 1892, said Jeremiah Taylor was lawfully married to Mary E. T. Farmer; that prior to said marriage the parties thereto, on November 22, 1892, entered into an ante-nuptial contract, in which it was agreed that said Mary E. T. Farmer should take in lieu of dower, homestead, inher-

itance, distribution or award, $2000, to be paid in cash within sixty days after the death of said Jeremiah Taylor; that said Jeremiah Taylor died July 6, 1895, leaving Mary E. T. Taylor his widow, and no father, mother, child or descendant of a child; that said alleged will was admitted to probate by the county court of Jefferson county, Illinois, and Orlando M. D. Ham qualified as executor thereof; that as executor he paid to the widow, Mary E. T. Taylor, within sixty days after the death of said Jeremiah Taylor, the $2000 named in said ante-nuptial contract, and she receipted for said sum in accordance with the contract; that the said Jeremiah Taylor left as his only heirs-at-law the plaintiffs in error and W. C. Hudnall, who was made a defendant, his half-brothers and sisters and their descendants, and that the will was revoked by the subsequent marriage, and the estate descended to such heirs-at-law. The widow and executor were also made defendants, and the prayer was that the probate of the will should be set aside, the will declared to have been revoked, and the estate distributed to the heirs-at-law. Answers were filed by all the defendants, but on leave of the court the answers of the claimants under the will, and of the widow, were withdrawn, and they demurred to the bill. The demurrers were sustained, and, the complainants electing to stand by the bill, the court dismissed it at their cost. The widow, Mary E. T. Taylor, filed her cross-bill in the case to set aside the ante-nuptial contract, and claimed the whole estate because of the alleged illegitimacy of Jeremiah Taylor. Demurrers were sustained to this cross-bill, but she took leave to amend, and the cross-bill is still pending in the circuit court, so this court does not take cognizance of it.

The only question involved in this case is the sufficiency of the bill of plaintiffs in error to which the demurrers were sustained, and this depends mainly upon the question whether the will of Jeremiah Taylor was revoked by his subsequent marriage, under the provision

172—6

of section 10, chapter 39, of the Revised Statutes. It is contended by defendants in error, who claim under the will, that this provision is unconstitutional and void because not embraced within the title of the act, and therefore in conflict with section 13, article 4, of the constitution. The constitutional provision is as follows: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." The title of the act in question is, "An act in regard to the descent of property," and the provision of section 10 the validity of which is challenged is, "a marriage shall be deemed a revocation of a prior will." The argument is, that this provision relates to acquiring property by purchase, and not by descent, which is the subject named in the title.

Prior to the enactment of this statute it was held that in this State, where husbands and wives are heirs to each other, a subsequent marriage operated as a revocation of a will which disposed of the whole estate of the testator and made no provision for such contingency or change of relation as the subsequent marriage. (*Tyler* v. *Tyler*, 19 Ill. 151; *American Board of Foreign Missions* v. *Nelson*, 72 id. 564; *Duryea* v. *Duryea*, 85 id. 41.) Under these decisions the will of Jeremiah Taylor would have been revoked by his subsequent marriage regardless of the provision of the statute, since the will contained no provision in contemplation of the relation arising out of such marriage, unless the rule in that respect would be affected by the terms of the ante-nuptial contract. That contract declared that Mary E. T. Farmer had been informed of the will, and approved of it, and she agreed that she would not interfere with it in any way during the lifetime of said Jeremiah Taylor, or thereafter. It is argued on behalf of the claimants under the will that this agreement prevented a revocation under the rule prior to the pas-

sage of the statute, and that there was no revocation under the statute because of its invalidity. It will not be necessary to consider the effect of her agreement upon her rights, for the reason that, if the statute is valid, plaintiffs in error have a right to claim the benefit of it, and the will is revoked by virtue of the statute.

In determining whether the provision in question is embraced within the title of the act a liberal construction is to be given to the constitution, and unless the provision contains matter incongruous, and having no proper connection or relation to the title, it will not be void as not embraced therein. (Cooley's Const. Lim. 172.) In *People* v. *Nelson*, 133 Ill. 565, it was held that the generality of a title is no objection to it, so long as it is not made to cover legislation incongruous in itself, and which, by no fair intendment, can be considered as having a necessary or proper connection. In *Ritchie* v. *People*, 155 Ill. 98, it was said (p. 120): "Courts always give a liberal, and not a hypercritical, interpretation to this restriction. All matters are properly included in the act which are germane to the title. The constitution is obeyed if all the provisions relate to the one subject indicated in the title, and are parts of it or incident to it, or reasonably connected with it, or in some reasonable sense auxiliary to the object in view." As to this statute, it is also to be considered that its validity has often been affirmed by the courts. In *American Board of Foreign Missions* v. *Nelson*, *supra*, referring to *Tyler* v. *Tyler*, *supra*, it was said: "By a recent statute, passed since the rights of the parties to this litigation attached, the principle of that decision has become the positive law." Wills were also declared to have been revoked and annulled by virtue of the statute, in the cases of *McAnnulty* v. *McAnnulty*, 120 Ill. 26, *Crum* v. *Sawyer*, 132 id. 443, and *Sloniger* v. *Sloniger*, 161 id. 270.

It is true that the word "descent," in its technical, legal meaning, denotes the transmission of real estate, or some interest therein, on the death of the owner intestate, by

inheritance, to some person according to certain rules of law.   In such meaning it is distinguished from transmission by devise, which is technically by purchase, and also from the transmission of personal property, the title of which passes to the administrator, and, after the payment of all debts and claims against the estate, is governed by certain rules of distribution.   If the meaning of the term "descent" is so limited to its technical significance, the provisions of the act relating to the distribution of personal estate are not within such meaning.   The term as used in the act, and as it has always been used in our statutes, includes the course of transmission, by operation of law, of both real and personal property when the owner dies intestate, or his estate or any part thereof is deemed and taken as intestate estate.   Any provision, therefore, as to what shall be intestate estate in the law is germane to the general subject.   Of this character are the provisions of the act that all estate not devised or bequeathed in the last will and testament of any person shall be distributed in the same manner as the estate of an intestate; that if, after making a last will and testament, a child shall be born to any testator, and no provision be made in such will for such child, unless it shall appear by the will that it was the intention of the testator to disinherit such child, the devises and legacies given by such will shall be abated to raise a share for such child as though the testator had died intestate; that under certain conditions the estate disposed of by a devise or legacy shall be considered and treated in all respects as intestate estate, and that in case of the marriage of a person after having made a will the estate shall be intestate estate and shall pass under the provision of the statute.   The provision that a marriage shall be deemed a revocation of a prior will is in effect a declaration that in such an event the estate shall be deemed and taken to be intestate estate, so far as such will is concerned.   It cannot be said that the provision has no proper connec-

tion or relation with the descent of property as intestate estate, or that it could operate as a fraud or surprise upon the legislature as a provision foreign to the subject of legislation expressed in the title. It was passed at the same session of the legislature as the Statute of Wills, providing for a revocation of a will by particular means mentioned in that statute, and the two provisions are to be read together, as embracing the legislative will on that subject. We regard the provision as valid, and the will of Jeremiah Taylor as being revoked by his marriage by force of the statute.

The defendant in error Mary E. T. Taylor, while insisting that her marriage with Jeremiah Taylor revoked his will, insists, in support of her demurrer, that the bill was not sufficient as to the ante-nuptial contract for a failure to set out affirmatively all the facts showing that she had full knowledge of the property belonging to Jeremiah Taylor, and of all the rights and advantages in his estate that she was surrendering by entering into the contract. The bill alleged that the ante-nuptial contract had been executed and the money paid to her, and receipted for under it. Plaintiffs in error were not seeking to enforce against her an executory contract, but alleged one which had been ratified and acted upon after the death of Jeremiah Taylor, and completely executed. This was a sufficient averment, and if, for any reason, she could set aside the contract and settlement, the burden must necessarily rest upon her. The payment was made by one acting as the legal representative of Jeremiah Taylor, in pursuance of the contract, under a will which had been admitted to probate. The payment was a proper act, which any executor or administrator would have been bound to perform in the due course of administration, and if the probate of the will should be set aside and the will annulled, the payment would be valid and binding to the same extent as if done on behalf of the estate by an administrator.

As before stated, the cross-bill of Mary E. T. Taylor is not before this court, and nothing that is herein said relates in any way to her rights under the cross-bill.

The decree of the circuit court is reversed, and the cause is remanded to that court with directions to over-rule the demurrers and to proceed in conformity with what has been said.        *Reversed and remanded.*