DURFEE v. RISCH.

WILLS—REVOCATION—FEME SOLE—MARRIAGE—BIRTH OF CHILD.
Marriage and birth of a child to a woman revokes a will made by her prior to her marriage (§§ 9270, 9285, 3 Comp. Laws).

Case made from Livingston; Smith, J. Submitted November 7, 1905. (Docket No. 96.) Decided December 30, 1905.

Edith Durfee presented for probate the last will and testament of Anna B. Risch, deceased. The will was disallowed in the probate court, and proponent appealed to the circuit court. There was judgment for proponent on a verdict directed by the court, and contestant appeals. Reversed.

*Louis E. Howlett*, for appellant.
*Shields & Shields*, for appellee.

MONTGOMERY, J. On appeal from the probate court, the circuit judge directed a verdict admitting the will in question to probate. Contestant appeals.

Testatrix, while unmarried, executed the will in ques-

tion. She subsequently married, and had issue, one child, who survives. The sole question is whether the will of a single woman is revoked by her subsequent marriage, followed by the birth of a child or children. Our statute of wills (section 9270, 3 Comp Laws), which prescribes the formalities required for the revocation of wills, provides that "nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." There is no doubt that at the common law the marriage of a male testator, followed by birth of issue, operated to revoke a will. This revocation was implied from the changed relations and obligations of the testator, and was based upon the presumption that, had the same conditions and obligations existed at the time of the execution of the will and been taken into account, a different will (if any) would have been made. Page on Wills, § 283; 1 Woerner on American Law of Administration (2d Ed.), § 54. It is difficult to suggest any reason why the same implication of a revocation should not arise in case of a female testatrix. The presumption that, had the same conditions existed at the time of the execution of the will as existed later, the disposition of the estate would have been different, is certainly as strong in the case of a wife and mother as in case of a husband and father.

The proponent argues that the rule as to the revocation of the will of a female was, at the common law, that her subsequent marriage alone revoked the will; that since by statute a married woman may now make a valid will, and since it is generally held that the effect of this statute is to abrogate the rule that marriage alone (in the case of a woman) revokes the rule, it follows that there is left no common-law rule upon which a revocation of a will by a female can be predicated. This is ingenious, but not convincing. It is true that the weight of authority sustains the view that, where statutes like our married women's act (section 8690, 3 Comp. Laws) exist, marriage of a feme sole does not of itself operate to revoke the will.

*Kelly* v. *Stevenson*, 85 Minn. 249 (56 L. R. A. 754); *In re Will of Ward*, 70 Wis. 251. This is the rule in this State. *Noyes* v. *Southworth*, 55 Mich. 173.

The common-law rule as to the implied revocation resulting from marriage of the testatrix rested upon the ground that, after marriage, she could not make a new will, and as a will is ambulatory during the life of the testator, the continuing purpose to continue the will previously made in force could not be presumed from mere inaction on the part of one who, because of disability, could not act. Where, as in this State, the reason for this rule fails, the rule fails. It does not follow, however, because the marriage alone does not revoke the will, that marriage and birth of issue do not. The abrogation of this rule places the male and the female on the same plane as to this, i. e., that the subsequent marriage does not of itself revoke the will. But it is illogical to say, because the existence of a more restricted rule to the wills of females prevented the application of the general rule of the common law, that such rule should not be applied to male and female alike, when the removal of the latter's disability makes the general rule applicable. As was said of a similar question in *Lansing* v. *Haynes*, 95 Mich. 16, the common law is not so unbending as to lead to this result.

"The reason of the law is the essence and soul of the law."

In *Noyes* v. *Southworth*, supra, it was said:

"Our Constitution has done away with all the disabilities of coverture on this head, and expressly authorized every married woman to make wills of her estate as if she were sole. This leaves her case to be governed by the same rule which would apply to any one else on change of condition. * * * There is no sound reason that we can perceive why, in the absence of statute, implied revocations should be extended, or should be differently treated as between men and women, when the property rights of married women have ceased to be hampered by marriage."

But it is further insisted that, as section 9285, 3 Comp.

Laws, makes provision for a child born after the making of his *father's* will, the rule that marriage and birth of a child revokes a will previously made by the father is abrogated. It is contended that this provision applies only to a man's will, and it was so held in *Cotheal* v. *Cotheal,* 40 N. Y. 405; but it is at the same time urged that, inasmuch as the rule as applied to a woman's will is applied by analogy, it follows that if the statutes have abrogated the rule as to men it follows that the rule has to women no existence. This contention does not take account of the fact that we are to apply a principle of the common law, and that that principle is not affected by the withdrawal of a class of persons from those to be affected by its operation. We regard this principle of the common law as controlling, and hold that the marriage of the testatrix and subsequent birth of a child to her resulted in a revocation by operation of law.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and MCALVAY, OSTRANDER, and HOOKER, JJ., concurred.