[No. 6767.    Decided September 6, 1907.]

## In Re PETRIDGE'S WILL.

H. B. PETRIDGE, *Appellant*, v. T. H. KOLDERUP, *Respondent*.[1]

WILLS—REVOCATION—MARRIAGE—HUSBAND AND WIFE—STATUTES—
CONSTRUCTION. The will of a *feme sole* is revoked by her marriage
if her husband survives her, under Bal. Code, § 4598, so providing
as to a man whose wife survives, and Bal. Code, § 4615, providing
that words importing the masculine gender may be extended to fe-
males, when such construction is necessary, in view of our com-
munity property laws placing man and wife upon an equality as to
property rights, testamentary capacity, and right of inheritance.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered March 28, 1907, admitting a
will to probate and appointing an administrator with the will
annexed. Reversed.

*Fred H. Peterson* and *H. C. Force*, for appellant.

*S. S. Langland*, for respondent.

CROW, J.—On April 27, 1903, Alexia Caroline Halvorsen,
a single woman, residing in Seattle, executed her last will and
testament, devising her entire estate to her brother, Emil
Nelson, of Bordeaux, France. On October 11, 1905, she
married H. B. Petridge, whom she did not know at the date
of the will. They lived together as husband and wife until
December 27, 1906, when she died without issue. H. B. Pet-
ridge filed in the probate department of the superior court,
in and for King county, a petition for his appointment as ad-
ministrator, alleging that the will above mentioned had been
revoked by subsequent marriage of the testatrix. T. H. Kold-
erup, on behalf of Emil Nelson, also filed a petition for the
probate of the will and his appointment as administrator *cum
testamento annexo*, the will having named no executor. From

[1]Reported in 91 Pac. 634.

.an order admitting the will to probate and appointing T. H. Kolderup administrator *cum testamento annexo*, H. B. Petridge has appealed.

The only question on this appeal is whether the will of Alexia Caroline Halvorsen was revoked by her marriage. At common law the subsequent marriage of a *feme sole* revoked her will, for by such marriage she was deprived of testamentary capacity, her will ceased to be ambulatory in its nature, .and was therefore void. Subsequent marriage of a man did not revoke his will, for the common law made sufficient provision for his wife by her right of dower. But a subsequent marriage and birth of a child taken together, revoked his will. 2 Greenleaf, Evidence, § 684; 4 Kent, Commentaries, §§ 521-7.

The first legislature of Washington territory, Laws 1854, p. 312 (Abbotts Real Property Statutes, 381), passed an act relating to wills which contained the following sections.

"Sec. 1.  Be it enacted by the Legislature of Washington Territory, That every person of twenty-one years of age and upwards, of sound mind, may by last will, devise all his estate, real and personal, saving to the widow her dower."

"Sec. 3.  A married woman may by will, dispose of any real estate held in her own right, subject to any rights which her husband may have as tenant by curtesy."

"Sec. 7.  If after making a will, disposing of the whole estate of the testator, such testator shall marry and die, leaving issue by such marriage living at the time of his death, or shall leave issue of such marriage born to him after his death, such will shall be deemed revoked, unless provision shall have been made for such issue by some settlement, or unless such issue shall be provided for in the will, and no evidence shall be received to rebut the presumption of such revocation."

"Sec. 8.  A will made by an unmarried woman shall be deemed revoked by her subsequent marriage."

The enactment of the above sections 7 and 8 was an adoption of common law principles by our first territorial legislature.

This statute was continued without change until the territorial legislature passed an entirely new probate act, Abbotts

Real Property Statutes, 385, Laws 1860, p. 165, chapter 2 of which related to wills. In this chapter, sections 3 and 8 of the act of 1854 were continued without change, while sections 1 and 7 were respectively succeeded by the following:

"Sec. 18. Every person who shall have attained the age of majority, of sound mind, may, by last will, devise all his estate, real and personal. This section shall not be construed as depriving a widow of her dower, nor a husband of his interest as tenant by the curtesy."

"Sec. 23. If, after making any will, the testator shall marry, and the wife shall be living at the death of the testator, such will shall be deemed revoked, unless provision shall have been made for her by marriage contract, or unless she shall be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation, shall be received."

The acts of 1854 and 1860 both preserved to the widow and the husband, respectively, the common law estates of dower and tenancy by the curtesy, which have since been abolished and no longer exist in this state.

In Laws of 1873, p. 252 (Abbotts Real Property Statutes, 390), the territorial legislature again enacted a probate practice act, of which chapter 3, sections 22 to 43 inclusive, related to wills. These sections, which were incorporated in the Code of 1881 without change, are now sections 4594 to 4615, Bal. Code (2340 to 2361 Pierce's Code). Section 8 of the act of 1854, providing that subsequent marriage should revoke the previous will of an unmarried woman, was omitted from this act of 1873, while § 23 of the act of 1860 was reenacted as § 26 [Bal. Code, § 4598 (P. C. § 2344)], with the exception that the words "marriage settlement" were substituted for the words "marriage contract." The chapter of the act of 1873 relating to wills also contained an entirely new section, number 43, being Bal. Code, § 4615 (P. C. § 2361), reading as follows:

"Sec. 43. Words in this chapter contained, or in this act which import the singular number only, may also be applied

to the plural of persons and things, and words importing the masculine gender only, may be extended to females also when such construction shall be necessary."

Section 4597, Bal. Code (P. C. § 2343), relative to the revocation of wills, is to be found in all three of the territorial laws above mentioned, except that the words "testatrix" and "her" appeared first in 1873.

The respondent contends that the omission of original section 8 of the act of 1854 from the act of 1873 shows a legislative intent that the will of an unmarried woman should not thereafter be revoked in the event of her subsequent marriage. There might be some merit in this contention but for the fact that at the identical time § 8 was omitted, § 43 [Bal. Code, § 4615 (P. C. § 2361)], was first enacted. The appellant insists that, applying the rule of construction therein announced to § 4598, *supra*, the latter should be construed under the facts of this case to read as follows:

"If, after making any will, the testatrix shall marry and the husband shall be living at the time of the death of the testatrix, such will shall be deemed revoked . . . unless he be provided for in the will, or in some way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received."

Having due regard to the language used in the two sections now being construed, and also considering the history of our legislation on wills, property rights of husband and wife, and the descent of realty and personalty, we hold that the construction urged by appellant is necessary, and should be adopted. Endlich, Interpretation of Statutes, § 182. The acts of 1854 and 1860 relating to wills both protected the common law estates of dower and tenancy by the curtesy from destruction by the will of either the husband or wife. The first legislature, Laws 1854, p. 308, in chapters 11 and 12 of an act relating to executors, administrators, and the distribution of real and personal property, enacted a law of descents, chapter 11,

making no provision for the inheritance of real property by the husband from the wife or by the wife from the husband, although, chapter 12 did provide for such distribution of personalty under certain conditions. Section 242 of chapter 11, however, reads as follows:

"Nothing contained in this act shall affect the title of a husband as tenant by curtesy, nor that of a widow as tenant in dower."

In 1869, the first separate and community property law defining the rights of married persons was enacted, Laws 1869, p. 318 (Abbotts Real Property Statutes, 471). This statute was materially amended in 1871, Session Laws, page 67 (Abbotts Real Property Statutes, 474), but was reenacted in 1873, Laws 1873, page 450. It is evident from the separate and community property law originally passed in 1869, and reenacted in 1873, and the probate practice act of 1873, that the trend of legislation was a departure from the common law principles, with a tendency towards an equalization of the property rights of husband and wife. An examination of the probate act, and other statutes of 1873, however, discloses that no change in the law of descents was then made. The original act of 1854 relating to descents, with some immaterial amendments, was permitted to continue, doubtless by reason of legislative oversight or inadvertence. At the succeeding 1875 session, however, Laws 1875, p. 53, the legislature passed an act to regulate the descent of real estate and the distribution of personal property. This act for the first time provided for inheritance of realty by the husband and wife, the one from the other, making no mention of the estates of dower or tenancy by the curtesy. This legislation discloses an evident intention to harmonize the statute relating to wills and the law of descents with existing property rights under the separate and community property act then in force. Later amendments to the law of descents, and the law of separate

and community property, perfecting such harmony, have resulted in our present statutes on these subjects.

The entire trend of legislation since 1869 has been a departure from common law rules, with the evident intention of placing the husband and wife, as nearly as possible, upon an equality the one with the other, not only in their property rights, but also in their testamentary capacity, and their rights of inheritance, the only exception as to their property rights now being that the husband has the management and control of all of the community property, and the right to alienate community personalty. This exception, however, is necessary to enable him, as head of the family to engage in business and trade for the benefit of the community of which he is a member. Although these various laws have been at times crude, incomplete, and somewhat inconsistent, the ultimate purpose of the successive legislatures has been to secure harmony and equality. While applying proper methods of interpretation, our laws should be construed, if possible, to promote this harmony. The construction of Bal. Code, §§ 4598 and 4615, urged by appellant accomplishes this result without violence to any correct method of interpretation, while the construction asked by respondent would have the opposite effect.

Many unfortunate conditions might result were the contention of the respondent sustained. For instance, an unmarried woman could by will devise her entire estate. She might then marry, and although she and her husband might thereafter accumulate a large community estate, her previous will, if not revoked, would, in the event of her death without issue, pass one-half of such community estate to her legatees. On the other hand, a husband's will being revoked by subsequent marriage, the entire community estate, in the event of his death without issue, would pass to his widow. Again, if a single woman devised her separate estate and afterwards married, her will not being thereby revoked, her entire separate estate would, in the event of her death, pass to her legatees, while in the case of her husband, his will being re-

voked by subsequent marriage, one-half, or at least one-third, of his separate estate would, in the event of his death, descend to his widow by inheritance. These illustrations, and others that might be suggested, show that the construction for which the respondent contends does not preserve that harmony and equality in our laws pertaining to wills, property rights, and descent intended by our legislatures.

Testamentary incapacity in a married woman being the basis of the common law rule revoking her will executed while a *feme sole*, various courts hold that, when such testamentary incapacity has been removed by statute, the reason of the rule ceases, and that the rule itself therefore ceases to exist. *Kelly v. Stevenson*, 85 Minn. 247, 88 N. W. 739, 89 Am. St. 545, 56 L. R. A. 754; *In re Hunt's Will*, 81 Me. 275, 17 Atl. 68; *Will of Ward*, 70 Wis. 251, 25 N. W. 731, 5 Am. St. 174; *Roane v. Hollingshead*, 76 Md. 369, 25 Atl. 307, 35 Am. St. 438, 17 L. R. A. 592; *Morton v. Onion*, 45 Vt. 145; *Fellows v. Allen*, 60 N. H. 439, 49 Am. Rep. 328; *In re Tuller's Will*, 79 Ill. 99, 22 Am. Rep. 164.

The respondent has cited some of the cases mentioned above, and urges their application here. We do not regard them as pertinent under our present statutes, which make the husband and wife heirs one to the other. *In re Tuller's Will, supra,* is one of the cases cited by respondent, but the supreme court of Illinois, in *Tyler v. Tyler*, 19 Ill. 151, 155, says:

"We hold, that marriage under our statute making the wife heir to the husband and the husband heir to the wife, where there is no child or descendant of a child, is, in the absence of facts showing an intention to die testate arising subsequent to the marriage, a revocation of a will of the husband, made prior to the marriage, disposing of his entire estate without making provision in contemplation of the relations arising out of it."

The doctrine of this case is not only recognized in the *Tuller* will case, *supra*, but it has been frequently followed by the Illinois court, although at common law subsequent marriage and birth of a child, taken together, were required to

revoke the will of an unmarried man. *American Board of Foreign Missions v. Nelson*, 72 Ill. 564; *Duryea v. Duryea*, 85 Ill. 41; *McAnnulty v. McAnnulty*, 120 Ill. 26, 11 N. E. 397, 60 Am. Rep. 552; *Hudnall v. Ham*, 172 Ill. 76, 49 N. E. 985.

In harmony with these Illinois cases, is *In re Teopfer*, 67 L. R. A. 315, in which the supreme court of New Mexico, under a statute making the husband and wife heirs to each other, applied the same rule to a will executed by a single woman who afterwards married and died without issue. See, also, *Durfee v. Risch*, 142 Mich. 504, 105 N. W. 1114, 5 L. R. A. (N. S.) 1084; *Brown v. Scherrer*, 5 Colo. App. 255, 38 Pac. 427; *Scherrer v. Brown*, 21 Colo. 841, 42 Pac. 668.

Our construction of §§ 4598 and 4615, Bal. Code, we regard as being in complete harmony with former decisions of this court on kindred questions. *In re Murphy's Estate*, 30 Wash. 9, 70 Pac. 109; *In re Feas' Estate*, 30 Wash. 51, 70 Pac. 270. See, also, *Durfee v. Risch, supra; Ellis v. Darden*, 86 Ga. 368, 12 S. E. 652, 11 L. R. A. 51; *Owens v. Haines*, 199 Pa. 137, 38 Atl. 859; *Smith v. Allen*, 31 Ark. 268.

Respondent contends that the word "necessary," found in Bal. Code, § 4615, forbids the construction adopted by us, as no necessity for any such interpretation exists. There has been considerable discussion in the briefs of the correct definition of the word "necessary" as here used. Such discussion is immaterial, as a necessity for our interpretation does exist—to enforce evident legislative intent and to preserve the harmony of our laws pertaining to wills, property rights, and descents.

The honorable trial court erred in admitting the alleged will to probate, and in appointing T. H. Kolderup administrator *cum testamento annexo*. The judgment is reversed and the cause remanded with instructions to enter an order refusing to probate the will, and also an order appointing the appellant administrator of the estate of his deceased wife.

HADLEY, C. J., FULLERTON, RUDKIN, and DUNBAR, JJ., concur.