[No. 12791.   Department One.   August 31, 1915.]

*In the Matter of the Estate of* CARRIE VAN GUELPEN.

ALLISON E. LABEREE, *Appellant*, v. MILO A. ROOT,

*Respondent.*[1]

WILLS—REVOCATION—MARRIAGE — STATUTES — APPLICATION.  Rem. & Bal. Code, § 1323, providing that if, after making any will, the testator shall marry and the wife shall be living at the time of the death of the testator, the will shall be deemed revoked unless provision shall have been made for her in the will or by marriage settlement, applies to a will made by a woman, in view of Id., § 1340, providing that words importing the masculine gender only may be extended to females also when such construction shall be necessary.

SAME.  Under Rem. & Bal. Code, § 1323, providing that if, after making any will, the testator "shall marry," etc., the will shall be deemed revoked, a will made by a testatrix who was a married woman at the time the will was made is revoked by a subsequent marriage.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered September 26, 1914, upon findings in favor of the defendant, denying the probate of a will, tried to the court. Affirmed.

*George H. Funk* and *Frank C. Owings*, for appellant.

*Milo A. Root*, for respondent.

PARKER, J.—This is an appeal from a judgment of the superior court for Thurston county, rejecting probate of the last will of Carrie Van Guelpen, deceased, upon the ground that it was revoked by her marriage subsequent to its execution, by which judgment the court also appointed Milo A. Root administrator of her estate. From this judgment, Allison E. Laberee, the proponent of the will and principal beneficiary thereunder, has appealed to this court.

In August, 1905, Carrie Van Guelpen duly executed her last will, which is here involved. At that time she was the

[1]Reported in 151 Pac. 245.

lawful wife of Allison E. Laberee, this appellant, living with him in Thurston county. Thereafter the bonds of matrimony existing between them were dissolved by decree of divorce rendered in the superior court for Thurston county. Thereafter she was lawfully married to Otto Van Guelpen. Thereafter, on April 30, 1914, she died leaving her husband, Otto Van Guelpen, surviving her, and leaving property in Thurston county. Her will remained unrevoked up until the time of her death, except as the same may have been revoked by her marriage after its execution. A few days following her death, respondent, Milo A. Root, at the instance of Otto Van Guelpen, her surviving husband, petitioned the superior court for Thurston county to be appointed administrator of her estate, alleging that she had died intestate. A few days thereafter, Allison E. Laberee petitioned the same court for probate of her will, which she had executed in August, 1905, before her marriage to Otto Van Guelpen. Hearings upon these petitions were had at the same time, resulting in the judgment appealed from.

Counsel for appellant make two contentions that the judgment of the superior court is erroneous, as follows:

"(1) Because our statute in reference to the revocation of wills by a change in the status of the testator does not apply to the case of a testator married when the will was made.

"(2) Because our statute in reference to the revocation of wills by a change in the status of the testator, does not properly apply to the case of a female testator."

We shall notice these in inverse order. Our only statutory provisions touching revocation of a will by subsequent marriage of the testator or testatrix is found in § 1323 of Rem. & Bal. Code (P. C. 409 § 35), as follows:

"If, after making any will, the testator shall marry and the wife shall be living at the time of the death of the testator, such will shall be deemed revoked, unless provision shall have been made for her by marriage settlement, or unless she be provided for in the will, or in such way mentioned therein as

to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received."

Counsel's contention that this statute has no application to a will made by a woman, it seems to us, has been fully answered by the decision of this court in *In re Petridge's Will*, 47 Wash. 77, 91 Pac. 634, where the question was exhaustively examined in the light of the changed relations of husband and wife under our law from that under the common law, and in the light of our statute providing that "words importing the masculine gender only, may be extended to females also when such construction shall be necessary." Rem. & Bal. Code, § 1340 (P. C. 409 § 69). Counsel concede that decision to be decisive against their present contention, and direct their efforts to securing the overruling of the rule there announced by the court. We deem it sufficient to say that we have again examined the question and are satisfied with the views expressed in that decision. We adhere to the view that a will made by a woman should be deemed revoked by her subsequent marriage, under the same conditions that a will made by a man is deemed revoked, and that such is the proper construction of § 1323.

Recurring now to counsel's first contention, Does the fact that, when the deceased made her will, she was a married woman prevent her subsequent marriage to Otto Van Guelpen working a revocation thereof? It is argued that the words "shall marry," in § 1323, do not have reference to a woman who is already married at the time of the making of her will, but refer to a spinster who is yet to be married. We are not able to concur in this view. It seems to us that the words "when the testatrix shall marry" as appropriately apply to the future possible second marriage of a married woman as to the future possible marriage of a spinster. Now the revocation of a will by a subsequent marriage of the maker of it is but the result of an implication of intent to revoke the will on the part of the maker, arising from his or her changed

relationship to others. This is the reason of the rule, even though it be statutory, and circumscribed by fixed bounds. In *In re Adler's Estate*, 52 Wash. 539, 545, 100 Pac. 1019, we said:

"The grounds upon which courts have been most inclined to rest the rule of implied revocation of wills is that, because of new moral or testamentary duties arising from a relationship not in contemplation at the time of the execution of the instrument, it will be presumed that the testator had annexed the tacit condition that it should not take effect if a change occurred in his situation that brought with it other objects upon which his bounty should in good conscience be bestowed."

Surely this reason is as applicable to the changed relation arising from a second marriage as from a first marriage. Counsel for appellant cite and rely strongly upon *In re McLarney's Will*, 153 N. Y. 416, 47 N. E. 817, 60 Am. St. 664, and *In re Comassi's Estate*, 107 Cal. 1, 40 Pac. 15, 28 L. R. A. 414, holding that the will of a married woman was not revoked by her subsequent second marriage. Those decisions were, however, controlled by statute providing that "a will executed by an *unmarried* woman shall be deemed revoked by her subsequent marriage." In *In re Comassi's Estate*, the court observed:

"If it had been the purpose of the legislature that the will of any woman should be revoked by her subsequent marriage, it could have readily expressed that purpose in apt words, as has been done by the Wills Act of England, 1 Vict., c. 26, the eighteenth section of which provides that: 'every will made by a man or woman shall be revoked by his or her marriage.' The same provision is found in the statutes of many states in this country. Instead of so doing, however, the legislature of this state has limited this result to a will executed by an unmarried woman, in language which gives no opportunity for construction."

Apparently had the statute there involved been like ours, containing the words "shall marry" only, without distinguishing between married and unmarried women, the court would

have reached the same conclusion we do in this case. · The late decision of this court in *Koontz v. Koontz*, 83 Wash. 180, 145 Pac. 201, is in harmony with our views here expressed, though it deals with a somewhat different problem.

We conclude that the judgment must be affirmed. It is so ordered.

MORRIS, C. J., HOLCOMB, MOUNT, and CHADWICK, JJ., concur.