[Civil No. 3997. Filed September 26, 1938.]

[82 Pac. (2d) 894.]

In the Matter of the Estate of MARY ANN STARK, Also Known as MARY ANN STARK O'HARA, Deceased. FERN ELIZABETH SCHADE, Appellant, v. MAURICE O'HARA, Appellee.

Messrs. Minne & Sorenson, for Appellant.

Mr. Charles Bernstein and Mr. D. Kelly Turner, for Appellee.

LOCKWOOD, J.—Fern Elizabeth Schade, hereinafter called appellant, filed her petition in the superior court of Maricopa county, in which she alleged that one Mary Ann Stark, hereinafter called deceased, on the 18th day of December, 1931, made her last will and testament, and had since died. The usual necessary jurisdictional allegations followed, and appellant

asked that the will be admitted to probate, and that letters of administration, with the will annexed, be issued to her. This will was entirely in the handwriting of the testatrix, and in the following language:

"Los Angeles, California,
"December 18, 1931.

"This is my last will. I give, bequeath, and devise to my sister Susie Ellen Hodge, Crawford, Nebraska, in complete and perfect ownership, all my rights and property of every kind and nature, whether real, personal or mixed, wherever situated, appointing her executrix of my estate, without bond and giving her possession thereof.

"(Signed) MARY ANN STARK
"Witness: C. T. DeWITT, 3757 E. 6th St.
"Witness: KATHARINE A. DeWITT, 3757 E. 6th St."

Maurice O'Hara, hereinafter called appellee, filed his contest to and in opposition of the probate of the said will, alleging in substance that deceased and appellee were married in Arizona on the 3d day of November, 1933, and ever since that time and up to the death of deceased had resided together as husband and wife; that there were no children born as the issue of said marriage; that the will aforesaid had been revoked by operation of law, for the reason that it was executed before the marriage of deceased and appellee, and that no provision had been made for him either in the will or by marriage contract.

The matter came on for hearing on these pleadings. The minute entries show that certain documentary evidence was offered and a stipulation made as to specified facts, and the matter was then submitted to the court. Thereafter the following judgment was entered:

"This matter coming on regularly for hearing on the —— day of September, 1937, . . . ; all parties announcing they were ready, the Court admitted the

stipulation of counsel as to certain facts and received both oral and documentary evidence; the Court —— enters its order, as follows:

. . . . . . . . . . . .

"It is further ordered, adjudged and decreed that the instrument purporting to be the last will and testament of Mary Ann Stark, deceased, is void and of no effect; and,

"It is further ordered, adjudged and decreed that the petition for probate of said last will and testament of Mary Ann Stark be, and the same is hereby rejected and denied."

Whereupon this appeal was taken.

■■ There are two questions before us, one of practice and one on the merits. It is urged upon behalf of the appellee that since the record does not show just what evidence was offered, we must follow our rule that when all the evidence is not before this court, we will assume it was such as will sustain the judgment. This, of course, has been for long the rule on appeal in this court. We think, however, it is subject to the qualification that it applies only to the issues raised by the pleadings. The petition for probate of the will alleges its proper execution by deceased on December 18, 1931. The objections to probate admit this, and allege as the only ground of contest that the testatrix married the contestant after such execution, and that he has never been provided for by marriage contract, nor is he mentioned in the will. This being the case, the rule above referred to only requires us to assume the facts to be that the deceased executed a will before her marriage, in which no mention was made of her future husband, and that she never provided for him by marriage contract, nor in any other manner. But it does not require us to accept the conclusion of law drawn by the trial court from these facts unless we find it to be the proper one. *Maricopa County Municipal Water Conservation Dist.*

v. *Southwest Cotton Co.*, 39 Ariz. 65, 4 Pac. (2d) 369. We, therefore, consider the question as to whether or not these facts, as a matter of law, automatically revoke the will.

The unquestioned rule at common law was that the marriage of a woman revoked a will which was made by her prior to the marriage. 68 C. J. 831, sec. 535, and cases cited. However, this common-law rule has been very generally construed to have been revoked by the various modern statutes which permit married women to dispose of their property, generally referred to as the married women's acts. An example of such a statute is section 2174, Revised Code 1928, which reads as follows:

"*Control of separate property of married women; rights and liabilities.* Married women shall have the sole and exclusive control of their separate property, and the same shall not be liable for the debts or obligations of the husband, and may be sold, mortgaged, conveyed, or bequeathed by them as if they were unmarried. Married women of the age of twenty-one years and upwards shall have the same legal rights as men of the age of twenty-one years and upwards, except the right to make contracts binding the common property of the husband and wife, and are subject to the same legal liabilities as men of the age of twenty-one years and upwards."

This section has appeared in substance in our law ever since 1871, and we have held that it gives a wife perfect freedom in the control, use and enjoyment of her separate property, and makes her wholly independent of her husband in regard thereto. *Woffenden* v. *Charauleau*, 1 Ariz. 346, 25 Pac. 662; Id., 2 Ariz. 91, 11 Pac. 117. Since under the common law marriage did not revoke a will previously made by the husband, it would seem that under the section as above set forth the same rule would apply to the wife and that

the will in question was not revoked by the marriage of deceased and appellee. In fact, it is admitted by the latter that this would be true in the absence of further legislation, but he contends that this rule has been changed by a proviso in section 3638, Revised Code 1928, when interpreted in the light of section 3040, Revised Code 1928. These sections, so far as material to this case, read as follows:

"§ 3638. *Revocation; marriage.* No will made in conformity with the preceding section, nor any clause or devise therein, shall be revoked except by a subsequent will, codicil or declaration in writing executed with like formalities, or by the testator destroying, canceling or obliterating the same or causing it to be done in his presence; provided, that if after making a will the testator marries, and the wife survive the testator, the will shall be presumed to be revoked unless provision has been made for her by marriage contract, or unless she is provided for in the will, or in such way mentioned therein as to show an intention not to revoke such provisions, and no other evidence to rebut the presumption of revocation shall be received."

"§ 3040. *General rules of construction.* In the construction of the laws of the state, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislative powers:

. . . . . . . . . . . . .

"3. . . . words used in the masculine gender include the feminine and neuter. . . . "

It is the position of appellee that the portion of section 3638, *supra,* which expressly provides that if, after making a will, a man marries without providing for his wife by marriage contract, or expressly stating in the will that he does not intend to revoke it by his marriage, it is automatically revoked by such marriage, applies equally to a situation where the wife

makes a will prior to her marriage, without providing for the husband in a similar manner.

It is the contention of appellant, on the other hand, that since the language of section 3638, by its express terms, refers only to cases where the *wife* survives, it cannot be extended by construction to apply to a case where it is the *husband* who survives.

 We have repeatedly held that the cardinal rule of statutory construction is that we must, if possible, ascertain the intent of the legislature. There are many things which we are permitted and, indeed, required to take into consideration in ascertaining this, such as the language used, its grammatical construction, other statutes *in pari materia*, the general policy of the state, and many other well known rules of construction. But any or all of these are of importance only in so far as they enable us to determine the real meaning which the legislature intended to give to the statute. Our statutes regarding the respective rights and liabilities of husband and wife are more nearly identical with those of the state of Washington than with those of any of the other states, and we have so repeatedly held. As a corollary, the interpretation given by the courts of that state to such statutes is very persuasive. A precisely similar factual situation has arisen twice in that state. In the case of *In re Petridge's Will,* 47 Wash. 77, 91 Pac. 634, a woman made a will devising her entire estate to her brother, and thereafter married. The question arose in the course of administration of her estate whether her will in favor of her brother had been revoked by her marriage. The Supreme Court of Washington discussed the language of certain statutes which, it was contended, were *in pari materia* with those provisions of the Washington code, similar to sections 3638 and 3040, *supra,* and which it was urged

showed a legislative intent that the will of an unmarried woman should not fall within the rule laid down in the statute for the will of an unmarried man. It admitted that under certain circumstances, similar to those which appellant contends appear in our statutes, there might perhaps be a plausible argument for this contention. But the court ultimately based its decision entirely upon the general principles governing the respective property rights of husband and wife as shown by the Washington statutes when considered as a whole. Its language is so pertinent that we quote from it as follows (p. 636):

" . . . The entire trend of legislation since 1869 has been a departure from common-law rules, with the evident intention of placing the husband and wife as nearly as possible upon an equality the one with the other, not only in their property rights, but also in their testamentary capacity and their rights of inheritance; the only exception as to their property rights now being that the husband has the management and control of all of community property and the right to alienate community personalty. This exception, however, is necessary to enable him, as head of the family, to engage in business and trade for the benefit of the community of which he is a member. Although these various laws have been at times crude, incomplete and somewhat inconsistent, the ultimate purpose of the successive Legislatures has been to secure harmony and equality. While applying proper methods of interpretation, our laws should be construed, if possible, to promote this harmony. The construction of sections 4598 and 4615, Ballinger's Ann. Codes & St., urged by appellant, accomplishes this result without violence to any correct method of interpretation, while the construction asked by respondent would have the opposite effect. Many unfortunate conditions might result, were the contention of the respondent sustained. For instance, an unmarried woman could by will devise her entire estate. She might then marry, and, although she and her husband might thereafter

accumulate a large community estate, her previous will, if not revoked, would, in the event of her death without issue, pass one-half of such community estate to her legatees. On the other hand, a husband's will being revoked by subsequent marriage, the entire community estate, in the event of his death without issue, would pass to his widow. Again, if a single woman devised her separate estate, and afterwards married, her will not being thereby revoked, her entire separate estate would, in the event of her death, pass to her legatees, while in the case of her husband, his will being revoked by subsequent marriage, one-half, or at least one-third, of his separate estate would, in the event of his death, descend to his widow by inheritance. These illustrations and others that might be suggested show that the construction for which the respondent contends does not preserve that harmony and equality in our laws pertaining to wills, property rights, and descent intended by our Legislatures.''

This rule was affirmed in *Laberee* v. *Root,* 87 Wash. 146, 151 Pac. 245, Ann. Cas. 1917C 1037. With this statement of the Washington Supreme Court we are in full accord. Our statutes, like those of that state, show clearly that it has been the attempt and intent of our legislature, shown more clearly with each succeeding enactment, to place the husband and the wife on a perfect equality so far as property rights are concerned. The construction contended for by appellant would apply an entirely different rule to the disposition by a wife of her property from that which the legislature has expressly applied to a similar act by a husband, and restore that inequality existing at common law but abolished by the Married Women's Act of 1871, with the positions of the spouses reversed. We think that a construction so contrary to the plain intent of our statutes for the last sixty years should not be upheld unless the legislature has explicitly so provided, and this it has not done. We hold, therefore, that section 3638, *supra,* applies to wills made

by a woman before her marriage in the same manner as it does to a similar will by a man. Such being the case, the trial court correctly held that the will of the deceased was revoked by her subsequent marriage.

The judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.