Mrs. Lena Hillaert died testate in April, 1943. Upon filing of a petition in the Wayne county probate court for the probate of decedent's will, her surviving husband, Alphonse Hillaert, filed objections to the admittance of the will to probate. The controversy was certified to the circuit court of Wayne county. Upon trial by jury the will was sustained. Contestant has appealed.
One of the grounds relied upon by contestant is that subsequent to the making of the will in suit, a common-law marriage was consummated between contestant and decedent, and contestant claims that in consequence of such marriage decedent's will was revoked.
Testatrix and contestant were first married in 1915. In 1937 she secured a divorce from contestant. Shortly thereafter she married a man by the name of Vander Heyden; but testatrix divorced him in 1939. Thereafter in 1939 testatrix made the will in suit. In answer to a special question the jury found, and for the purpose of decision herein it may be admitted, that subsequent to her divorce from Vander Heyden, testatrix and contestant in September, 1941, entered into a common-law marriage. There were no children born of the marriages of testatrix to contestant. With the exception of two small bequests, testatrix left her estate in equal shares to her sister, Mrs. William Blaess, and her niece, Mrs. Ray DeBuck, the latter being the proponent of the will. *Page 346 
Contestant asserts that his marriage to testatrix in 1941, notwithstanding there was no issue of such marriage, revoked the will made prior to such marriage. But he is confronted with our holding in Noyes v. Southworth, 55 Mich. 173 (54 Am. Rep. 359), wherein the syllabus reads: "A woman's will is not revoked by her subsequent marriage so long, at least, as no children are born." However, appellant points out that in Durfee v. Risch,142 Mich. 504 (5 L.R.A. [N.S.] 1084, 7 Ann. Cas. 785), we held, again quoting the syllabus: "Marriage and birth of a child to a woman revokes a will made by her prior to her marriage." And, it is contestant's contention that since by statute (3 Comp. Laws 1929, § 13440, as amended by Act No. 79, Pub. Acts 1931 [Comp. Laws Supp. 1935, § 13440, Stat. Ann. § 26.981]),* and subsequent to our decision in the Noyes Case, a husband inherits one-third of the real property of his deceased intestate wife, he was thereby made an heir of his wife; and he urges that within the reasoning back of the holding in the Durfee Case,i.e., that the advent of an heir (birth of a child) revokes a woman's will made prior to marriage, his marriage subsequent to the making of his wife's will revoked the will even though there is no issue of the marriage, because by their marriage contestant became an heir of his wife under the above-cited statute.
In an effort to distinguish Noyes v. Southworth, supra, or to avoid the effect of a holding therein, contestant in his brief says:
"Upon this principle (of revocation by implication of a will in consequence of testatrix subsequently having an heir) there was prior to 1931 no *Page 347 
occasion to hold that the acquisition of a husband operated to revoke her will because the husband was not then an heir.
However, since 1931 (referring to Act No. 79, Pub. Acts 1931), when the husband was by statute made an heir, the same reason for revocation by operation of law is applicable as in case of her acquisition of an heir by having a child."
The pertinent portion of Act No. 79, Pub. Acts 1931, controlling descent of real property reads: "if the intestate shall be a married woman, one-third thereof (shall descend) to her husband."
Such was not the exact condition of the law at the time the controlling circumstances occurred in the Noyes Case. In that case the testatrix made her will in 1881, and she married Noyes on February 21, 1882, which was the date upon which her will would have been revoked by the marriage, if at all. The applicable statute then in force provided that under given conditions the husband of a wife who died intestate and withoutchildren of the marriage, inherited a share of her real estate. See Act No. 35, Pub. Acts 1881 (How. Stat. § 5772a).
Contestant is somewhat inaccurate in saying that prior to 1931 "the husband was not then an heir" of his wife who died intestate. Act No. 79, Pub. Acts 1931, amended section 13440 of Compiled Laws 1929. Among the other provisions in that section governing descent of real property are the following:
"If the intestate shall leave a husband or widow and no issue, one-half of the estate of such intestate shall descend to such husband or widow. * * *
"If the intestate shall leave a husband or wife and no issue, nor father, mother, brother nor sister, and there be no child of brother or sister, the estate of such intestate shall descend to the husband or wife of such intestate, as the case may be." *Page 348 
In quoting the above statutory provisions we are not unmindful that they are applicable only in case the intestate wife dies without issue; whereas the surviving husband's inheritance provided in Act No. 79, Pub. Acts 1931, is not dependent upon the death of the intestate wife without issue. Nonetheless, we think the above provisions have a material bearing upon the soundness or unsoundness of contestant's contention that it is only since the 1931 act became effective that the "marriage creates a new heir, her husband, by the very act of marriage." Instead the marriage, in event of there being no issue, resulted in the husband becoming an heir of his intestate wife under the provisions of the statute as they existed long prior to the 1931 act.
Further, the fallacy of contestant's contention that a husband first became an heir of his wife in consequence of the provisions found in Act No. 79, Pub. Acts 1931, is also quite conclusively disclosed when it is noted that for many years our statutes have provided that upon the death of an intestate wife the surviving husband takes one-third of her personal property, subject to payment of debts, et cetera. See 3 Comp. Laws 1929, § 15726, subd. 7 (Stat. Ann. § 27.2891). As now embodied in the probate code, see Act No. 288, chap. 2, § 93, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2 [93], Stat. Ann. 1943 Rev. § 27.3178 [163]). A like provision was in the statutes as long ago as when Act No. 138, Pub. Acts 1867, became a part of our law. It was also the law when the Noyes Case was decided. See 2 Comp. Laws 1871, § 4377, and Breen v. Pangborn, 51 Mich. 29. Contestant's contention that a husband was not an heir at law of his intestate wife prior to Act No. 79, Pub. Acts 1931, is not tenable. No reason is made to appear why we should depart from the former holding of this Court in *Page 349 Noyes v. Southworth, supra; and the circuit judge was correct in holding as a matter of law that the will in suit was not revoked by implication in consequence of testatrix's subsequent marriage to contestant.
Another ground of this appeal is indicated by the following question submitted by contestant: "Was the will of the deceased revoked by a later writing under the probate code, Act No. 288, chap. 2, § 9, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2 [9], Stat. Ann. 1943 Rev. § 27.3178 [79])?" The section of the statute to which reference is made reads:
"No will nor any part thereof shall be revoked, unless by burning, tearing, canceling or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil in writing, executed as prescribed in this chapter; orby some other writing, signed, attested and subscribed in themanner provided in this chapter for the execution of a will;
excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator."
Contestant was not able to and did not present as a part of his case "some other writing, signed, attested and subscribed in the manner" provided for the execution of wills; and therefore he did not bring himself within this provision of the statute. Instead he sought by the testimony of a single competent witness to establish the execution of a subsequent will in which the testimony of this one witness was to the effect that it contained a revocation clause which nullified the will in the suit. This subsequent will was not produced and the record is barren of testimony as to whether it was lost, destroyed or *Page 350 
suppressed. The sole witness to establish the contents or execution of a subsequent will was the attorney who drafted the same and the substance of his testimony is as follows:
"Lena Hillaert was in my office once. As near as I can recall, it was just a trifle over a year ago. That is probably the fall of 1942. I did one piece of business for her. Drew a will. That will was executed in my office, duly witnessed. * * * This will had a revoking clause in it. * * * She signed it in the presence of two people in my office."
Clearly contestant attempted to establish a later will and to show the contents thereof in part, i.e., in so far as it contained a revocation clause. But under the statute which controls the manner in which a lost or destroyed will may be proven for the purpose of revoking an earlier will, the testimony in the instant case was insufficient to justify submitting that issue to the jury. We are not unmindful that the record contains some testimony that testatrix in effect told a third party "everything was taken care of," evidently referring to the alleged subsequent will; but such testimony does not come within the requirements of the statute. The statute requires two witnesses. In part it reads:
"No revoking clause in any alleged, lost, destroyed or suppressed will * * * shall be sufficient to defeat or destroy the effect of such former will, unless the legal execution of said alleged, lost, destroyed or suppressed will, together with the fact that it contained such revoking clause * * * shall be established by at least 2 reputable witnesses, having knowledge thereof." Probate code, Act No. 288, chap. 2, § 26, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2 [26], Stat. Ann. 1943 Rev. § 27.3178 [96]).
Notwithstanding that the trial court might well have decided this phase of the case adversely to contestant *Page 351 
as a matter of law, instead this issue was submitted to the jury as bearing upon the question of whether the will in suit was the last will of testatrix. By its verdict the jury found against contestant's contention that the will in suit had been revoked by a later writing. In the respect just above noted the ruling of the trial court was unduly favorable to contestant, not adverse or prejudicial to him. See In re Leech's Estate, 277 Mich. 299.
Numerous other grounds of alleged errors are urged by appellant, among them that there was error in refusal to give to the jury certain of contestant's requests to charge, that the court erred in charging the jury, that the argument to the jury by proponent's counsel was prejudicial, and that the judgment entered in the circuit court was contrary to law. Each of such alleged errors has been given careful consideration, but we do not find in them any prejudicial error which would justify reversal. Especially is this true because from our review of this record we are of the opinion that the trial court at the conclusion of the proofs might well have directed a verdict in favor of proponent. The judgment entered in the circuit court sustaining the will is affirmed, with costs to proponent and appellee. The case will be remanded to the circuit court for certification to the probate court of Wayne county and further proceedings therein.
BUTZEL, C.J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and STARR, JJ., concurred.
* See Act No. 288, chap. 2, § 80, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2[80], Stat. Ann. 1943 Rev. § 27.3178[150]). — REPORTER. *Page 352