(Decided 22nd June, 1886.)

Ruth A. Baldwin, and Frank Baldwin, her Husband, and others *vs.* Maggie Elizabeth Spriggs, and others.

*Will—Revocation—Marriage—Birth of Children—Provision for After-born Children.*

As a general rule, marriage, and the birth of issue, operate as a revocation of a will previously made.

Such revocation rests upon the tacit condition annexed to the will when made, that it should not operate if there should be a total change in the family of the testator.

One of the exceptions to the general rule is where the testator has made provision for his children born after the execution of the will.

Property acquired by the testator after the execution of the will, and which is unaffected by the will, is not a provision for the after-born children.

Baldwin, *et al. vs.* Spriggs, *et al.*

Where a testator having disposed of the whole of the estate owned by him at the date of his will, again marries, and has children by his second wife, and makes no provision for such children, his will is revoked by operation of law.

APPEAL from the Orphans' Court of Anne Arundel County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, RITCHIE, and BRYAN, J.

*Edward C. Gantt,* for the appellants.

The Orphans' Court refused probate of the will of James Spriggs, not upon any ground of want of proof substantiating the capacity of the testator, and due execution of the instrument, but passed an order that "this Court is of opinion that the said paper-writing, propounded as the last will and testament of said James Spriggs, deceased, *was revoked by his subsequent marriage and birth of children* . . . . thereupon it is adjudged and ordered that probate of said paper be and the same is refused." This is manifest error, even if it were admitted, (which it is not,) that there is conferred an implied authority and jurisdiction upon the Orphans' Court to decide upon questions arising under sec. 302, of Art. 93 of the Code, relating to the manipulation of the instrument itself. The Orphans' Court in such case would then be confined to the strict letter of the enumerated modes of revocation mentioned in sec. 302. By no analogy of reasoning, and by no authority of decision, can it be contended that such Court has jurisdiction to apply an arbitrary rule or principle of law to the operation or effect of a paper, propounded in due form and execution as a will, and to adjudicate as a Court of probate, that the operation of such principle of

law had this or that effect. *Michael vs. Baker, Ex'rs*, 12 *Md.*, 158; *Schull vs. Murray, Ex'r of Ludeking*, 32 *Md.*, 9; *Schley vs. McCeney*, 36 *Md.*, 266.

When probate is granted, authority to determine what passes under the will is devolved upon Courts of law and equity, tribunals which are clothed with ample jurisdiction to decide that question. In *Numsen vs. Tucker*, 36 *Ga.*, 71, it is held that jurisdiction of Probate Courts is limited to the making and execution of the will, and they cannot inquire into the effect of subsequent events. The same is held in *Jollippe vs. Fanning*, 10 *Rich.*, 186; *Cowden vs. Dobyns*, 5 *Smedes & Mars.*, 82; *Wall vs. Wall*, 30 *Miss.*, 91; *Evans vs. Anderson*, 15 *Ohio St.*, 324.

The Orphans' Court has exclusive authority to decide upon proof of the will. The proof offered was sufficient. It was the duty of the Orphans' Court to admit the will to probate. It was necessary that the will should be admitted to probate to enable the appellants to assert their claim under it. The Orphans' Court had no jurisdiction to decide upon a question of revocation of the will. And the Orphans' Court had no authority to decide upon the operation and effect of any change of circumstances of the testator upon his will.

James Spriggs being a married man and having children living at the time of the execution of his will, which children survived him, his subsequent marriage and the birth of children do not work a revocation of his will, which does not dispose of all of his real and personal estate. The Act of 1810, ch. 34, codified in Art. 93, sec. 302, is plain, unambiguous and explicit in its language, and there will be no difficulty in its interpretation if the Court decides what it means by what it says.

This section 302, it is true, is in the identical language of 29 Charles 2, ch. 3, sec. 6, (Statute of Frauds.) And it is true that the potent meaning of the language of that Statute has been restrained and modified by the decisions of the Courts of England.

The earlier decisions in England, and, indeed, up to the case of *Marston vs. Roe, dem. Fox,* 8 *Add. & Ell.,* 14, are based upon the ground either of a change in the intention of the testator, inferred from change of circumstances, or else an implied tacit condition attached to the will, that it should be inoperative upon such change of circumstances, by marriage and birth of issue.

In *Marston vs. Roe, dem. Fox,* Ch. J. TINDAL, in delivering the opinion of the Court, says: "We all concur in opinion that the revocation of the will takes place in consequence of a rule or principle of law independently altogether of any question of intention of the party himself."

This has never been acknowledged as a principle of law in our State. In *Tongue vs. Morton,* 6 *H. & J.,* 21, the only case in which the point ever was presented in this Court, the rule was doubted as applicable.

In the States the statute laws have, to more or less extent, enacted some provision for revocation from change of circumstances of the testator. In Maryland, perhaps alone, the statute, as embodied in sec. 302, Art. 93 of the Code, has made no exception to the literal requirements of Art. 93, sec. 302, which points out the only modes by which wills can be revoked. It is to be presumed, that in the enactment of the statute of 1810, and the codification of the laws in 1860, had it been intended that this rule or principle of law was embraced in the meaning of sec. 302, it would have been so expressed.

This Court says, in *Sewell vs. Slingluff,* 57 *Md.,* 537, "That the statute is imperative, and that wills can be revoked only in the mode pointed out therein."

Assuming that the rule contended for is established law, independent of the principles upon which it was originally founded, such as change of intention, &c., in order to apply it to this case, the circumstances of this case must be in accord with the state of facts existing in the cases decided, where the rule was held to apply. "The rule is

subject to numerous exceptions," is the language of the Chancellor in *Brush vs. Wilkins,* 4 *Johns. Ch.,* 510. By comparison of the record in this case with the adjudicated cases referred to by the appellees, it will be found that the existing state of facts in this case will not justify the application of the rule.

It cannot be successfully argued that the rule should apply, because of the principles upon which it was originally contended for; that change of intention can be *inferred* from the existence of certain facts, but cannot be *proved* by other facts; that a tacit condition attached to a will, operative upon the happening of subsequent events, can be implied or presumed, but cannot be established by the most indisputable evidence. *Sewell vs. Slingluff,* 57 *Md.,* 537.

*James Revell,* and *Daniel R. Magruder,* for the appellees.

The order of the Orphans' Court, refusing probate to the alleged will, is correct, and should be affirmed.

The paper was executed with regard to the condition and status of the alleged testator at the time, with the implied condition that it should not take effect in the event of second marriage and birth of a child or children.

The subsequent marriage and birth of issue are such changes in his condition and status, that they work by operation of law a revocation of the will, without any act or agency of the alleged testator directly operating upon the paper. The fact of a previous marriage and birth of children does not alter the tacit condition. *Marston vs. Roe, dem. Fox,* 8 *Ad. & El.,* 14, (35 *Eng. C. L. Rep.*); *Brush vs. Wilkins,* 4 *Johns. Ch. R.,* 510; *Redfield on Wills,* (*Ed. of* 1864,) 293, 294, 299; 1 *Jarman on Wills,* 268, 270, 271, 276, 277, (*and especially note on p.* 271); 3 *Jarman on Wills,* 783; *Wms. on Ex'rs,* (6th *Am. Ed.,*) 229, 230–3–4–5; *Doe, dem. Lancashire vs. Lancashire,* 5 *T. R.,* 49; *Tongue vs. Morton,* 6 *H. & J.,* 21.

The will is not confined to an unmarried testator, but applies to the case of one whose wife subsequently deceases, and he marries again and has issue of the subsequent marriage. *Redfield on Wills, Ed. of* 1864, *p.* 293, *sec.* 2; *Christopher vs. Christopher, cited in* 4 *Burr.*, 2182, *same case,* 2 *Dickens,* 445; 1 *Jarman on Wills, (Eng. Ed.,* 1861,) 115.

Marriage and the birth of a child are an implied revocation of a will previously made, disposing of the testator's whole estate, where there is no provision in or out of the will for such new relations, and it makes no difference whether the testator had children at the date of his will or not. *Redfield on Wills,* 299; *and note* 29; *Haven vs. Van DenBurgh,* 1 *Denio,* 29.

This implied revocation, *by operation of law,* is unaffected by our statutes *limiting the manner of revocation by a testator acting directly upon the paper itself. Code, Art.* 93, *secs.* 302, 303; *Act of* 1798, *ch.* 101, *sub-ch.* 1, *sec.* 4; *Act of* 1810, *ch.* 34, *sec.* 3.

The British statutes upon the same subject are in almost identical language, and were in force at the time of the latest decisions in the Courts of England sustaining the doctrine of revocation by subsequent marriage and birth of issue. 29 *Ch. II, ch.* 3, *secs.* 6 *and* 22; *Redfield on Wills,* 346.

The point made by appellants in the Orphans' Court, to the effect that the question is not one as to the validity of the will, but of its construction by some other Court, is utterly untenable. If the will has been revoked, it is no will at all, and no question of construction can arise. If revoked, probate must be refused, and the Orphans' Court is the only Court having jurisdiction over the subject. *Code, Art.* 93, *sec.* 318.

STONE, J., delivered the opinion of the Court.

There is no dispute about the material facts in this case. James Spriggs, of Anne Arundel County, on the 25th of

July, 1865, duly executed his will. By that will he disposed of all the property, real and personal, which he then owned. James Spriggs, at the time of the execution of the said will, had a wife, Ruth Spriggs, then living, and several children by her also living:—By his said will he devised all his property to said wife and children. His wife Ruth died in 1871, and said James soon after the death of said Ruth, about 1874, intermarried with Maggie E. Vane, and also had by her several children. Said James Spriggs died in January, 1886, leaving, a widow, the said Maggie E. Spriggs, and a child by the said Ruth, and children by the said Maggie E., surviving him. After the execution of the will, the said James Spriggs purchased certain other real estate which was unaffected by said will. His will as to his real estate contained no residuary clause, but disposed of all the real estate he owned at its date, by specific description. After the death of James Spriggs, his will was offered for probate in the Orphans' Court of Anne Arundel, and a caveat was filed thereto by his second wife, Maggie E. Spriggs, in behalf of herself and her children, and upon such caveat plenary proceedings were had, and the Orphans' Court ordered and decreed that said will was revoked by his subsequent marriage, and the birth of issue, and refused to admit the paper to probate. From this decree the daughter of the testator by his first wife, and two of his grandchildren have appealed to this Court. These are all the facts necessary to elucidate the legal proposition which we are called upon to decide, and which is simply, whether upon this state of facts, the will of James Spriggs has been revoked by operation of law. It would be a profitless task to review all the English cases on the subject. They may be found by the curious fully discussed by Chancellor KENT with his usual ability, in the case of *Brush vs. Wilkins,* 4 *Johnson's Chan. Rep.,* 506. It is enough for us to say that after a good deal of doubt and hesitation, it was finally

settled in England, *before our Revolution*, that marriage and issue taken together did amount to an implied revocation of a will previously made, and that such implied revocations were not within the Statute of Frauds, but that such implied revocations might be rebutted and controlled by circumstances.

The final determination of the matter seems to have been reached by the cases of *Christopher vs. Christopher,* decided by the Court of Exchequer, PARKER, C. B., presiding, in 1771, 2 *Dickens,* 445, and the case of *Spraae vs. Stone,* decided in 1773, *Ambler,* 721.

These cases appear to have definitely settled the law, that a subsequent marriage and birth of a child standing alone, and unaccompanied by other circumstances, amount to an implied revocation of a will.

The whole subject, says Chancellor KENT, has continued to receive great discussion in the English Courts since the era of our Revolution, growing out of new cases constantly arising amidst the endless variety of human affairs.

The most important of the English cases since the Revolution, is the case of *Marston vs. Roe, dem. Fox,* decided in 1838, by fourteen out of the fifteen English Judges, (8 *Adol. & Ellis,* 14,) where the general doctrine we have stated was re-affirmed. We will recur to this case again for another purpose.

But we are not without decisive authority in our own State. The unreported case of *Sedwick vs. Sedwick,* decided at June Term, 1844, was a case similar to the one at bar, and the Court of Appeals decided that the subsequent marriage and birth of a child did revoke the will, and they affirmed the decree of the Orphans' Court refusing it probate.

No opinion was filed in the case although a large amount of property was involved, and the case was argued by some of the most eminent counsel in Maryland. But they did

flatly decide the question by a decree, declaring the will revoked by the subsequent marriage and birth of a child.

But while such is the general rule, like other general rules, it has been held in England subject to some exceptions. Among the exceptions is the one where, the testator has made provision for his children born after the execution of the will. As the origin of the rule was the duty of the parent to provide for his offspring, this exception seems right and proper.

Another matter upon which the English Courts have exercised themselves, is the determination of the ground upon which the doctrine of implied revocation ought to be rested.

This is of practical importance in this case, and will require some examination. Lord MANSFIELD, in the case of *Brady vs. Cubitt,* 1 *Douglas,* 31, thought the rule should rest *on the presumption that the testator intended to revoke his will,* and that it therefore followed that such presumption might be rebutted by even parol evidence.

To use his own words that such presumption might be rebutted by "every sort of evidence." But Lord MANS-FIELD's view seems to us irreconcilable with the Statute of Frauds. It would, in effect, allow the will to be revoked by the subsequent intention of the testator, without such intention being evidenced by the positive acts so expressly required by that Statute.

That view leads to another difficulty, that the testator may change his first intention and adopt a contrary one, and if so, which of the two intentions is to prevail?

The conclusion however that Lord MANSFIELD reached, that every sort of evidence was admissible, was but the logical consequence of the ground upon which he rested the rule, namely,—that of *presumed alteration of intention.*

This case was decided in 1778.

But the Courts there, seem to have felt the difficulties that would result from such a view, and Lord KENYON, in

*Doe, dem. Lancashire vs. Lancashire,* 5 *Term Rep.,* 49, decided in 1792, placed the rule upon another ground, namely,—*a tacit condition annexed to the will when made,* that it should not take effect if there should be a total change in the situation of the testator's family. This view of Lord KENYON was afterwards adopted by Lord ELLENBOROUGH, in the case of *Kenebel vs. Scrafton,* decided in 1802, 2 *East,* 534.

Finally the Court, in *Marston vs. Roe, dem. Fox,* heretofore cited, unanimously adopted the views of Lord KENYON, and it may now be considered as settled in England, that the doctrine of implied revocation rests upon the ground of a tacit condition annexed to the will *when made,* that it should not take effect if there should be a total change in the situation of the testator's family. In this we concur.

If we adopt the English rule, that the will is not revoked if the testator makes provision for the children of the subsequent marriage, the question arises in the case at bar, whether he can be considered to have made such provision, by the purchase of the property acquired by him between the date of his will and his death. This question must be answered both upon reason and authority, in the negative.

The testator disposed of all the property he then owned by his will; but he lived twenty years after its date, and in the meantime purchased other real estate, which the children of the second wife would share with those of the first. But the mere *accumulation* of additional property, cannot, upon any ground of reason, be considered a *provision* made by the testator for the second set of children, any more than for the first set, as the latter are equally benefited by it. The injustice of considering after-acquired property a provision for the second children, will be the more readily seen if we consider a case, (and such

have frequently occurred) where the beneficiaries under the will were comparative strangers, or remote collaterals.

Again, if after-acquired property should be held a provision for the after-born children, how much property must be so acquired? It could hardly be said that the purchase of an acre of poor land, or a cow or horse could be so considered, and if not, by what rule should the value of such property be estimated?

But we are not without authority on this subject. In *Marston vs. Roe, dem. Fox,* above cited, the point was made, that an after-purchased estate did not pass by the will, but descended to the son in fee, and thereby became a provision for him and prevented the revocation; but in answer to this objection the Court said:

"In the first place we answer that no case can be found in which after-acquired property descending upon a child, has been allowed to have that effect, and indeed such a proposition seems incompatible with the nature of a condition annexed to the will."

To determine that after-acquired property was a provision for the after-born child, would be totally inconsistent with the theory, that the rule of implied revocation rests upon the tacit condition annexed to the will *when made,* that it should not take effect if there should be a total change in the situation of the testator's family. Instead of the change in the *family,* it would make a change in the *property,* one of the essential elements to determine the implied revocation. The will of the successful testator would stand, that of the unfortunate would be revoked.

Upon the whole case presented by the record before us, we are of opinion that the testator having disposed of the whole of the estate owned by him at the date of his will, and having again married and had children by his second wife, and having made no provision for such chil-

·dren, that his will was revoked by operation of law, and that the order of the Orphans' Court must be affirmed.

> *Order affirmed,*
> *the costs to be paid*
> *out of the estate.*

(Decided 22nd June, 1886.)