## PASCUCCI v. ALSOP et al.
### No. 8829.

United States Court of Appeals
District of Columbia.

Argued Dec. 12, 1944.

Decided Jan. 29, 1945.

Mr. George C. Gertman, of Washington, D. C., for appellant.

Mr. William Sabine, of Washington, D. C., for appellees Mary, Settinia and Josephine Pascucci, by designation of the Alien Property Custodian.

Mr. Thomas M. Baker, of Washington, D. C., for appellee Executors, Alsop and Repetti.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

GRONER, C. J.

The single question here is whether in a case in which an unmarried man, without children by a former marriage, devises all of his property by will and leaves no provision for any child of his subsequent marriage, the law annexes to such will the tacit condition that if he afterwards marries and has a child born of such marriage, the will shall be held revoked and of no effect.

The testator, Agostino Pascucci, was married twice, and there were no children of the first marriage. In the interval between the death of his first wife and his second marriage he made his will, disposing of his entire estate, devising the greater part to his three sisters in Italy. Two and a half years later he married his second wife and about three years thereafter died, survived by his second wife and a posthumous child born seven months after his death.

His Executors offered his will for probate and appellant, as Guardian-ad-litem

for the infant, opposed probate on the ground that the will was revoked by the subsequent marriage followed by the birth of issue. The District Court, feeling bound by our decision in Morris v. Foster, 51 App.D.C. 238, 278 F. 321, certiorari denied 259 U.S. 582, 42 S.Ct. 586, 66 L.Ed. 1074, properly sustained the will and ordered its probate. This appeal followed.

The Morris case, decided by this court in 1922, included a dictum to the effect that the applicable District of Columbia statute,[1] specifying with particularity the manner in which a will may be revoked and concluding with the words "any former law or usage to the contrary notwithstanding," imposed upon the court a duty to probate the will, notwithstanding the marriage and birth of a child subsequent to its execution. Very little appears in explanation of the reason of the holding, but, obviously, the court was of opinion that the grounds of revocation specifically enumerated in the statute, considered in relation to its hereinbefore quoted concluding words, were all-inclusive, and precluded revocation by operation of law. The question has not arisen since, but we think it of sufficient general importance to require re-examination.

The law of wills and of probate as existing in Maryland on February 27, 1801, was and is the law of the District of Columbia, except as since altered by Congress.[2] In the respect in which we are concerned here there has been no local change in the Maryland law, except that in 1901,[3] Congress, in a general revision, re-enacted the provision for the District of Columbia just as it had been in Maryland since 1798, with only a few verbal and inconsequential changes; so that as of the present time the section quoted in footnote 1 is in all material respects identical with the law as it was in Maryland, and consequently in the District of Columbia, in 1801. And the provision as it then existed is the same as the Sixth Section of the English Statute of Frauds, enacted in 1676, and it is "law or usage'" prior to 1676, and not prior to 1901 or 1801, which was affected by the words of the statute in England, Maryland and the District of Columbia. Accordingly, in ascertaining its meaning we are to be guided by the construction of that provision of the Statute of Frauds by the courts of England and the like provision by the courts of Maryland. The English cases are collected and discussed by Chancellor Kent in the case of Brush v. Wilkins, N.Y.1820, 4 Johns. Ch. 506. An examination of these demonstrates quite clearly that the doctrine was definitely established in England before our Revolution that implied revocations of wills were not within the Statute of Frauds and that marriage and the subsequent birth of a child, following the execution of a will, operated as an implied revocation. In the United States, in the absence of a statute abolishing the common law rule and establishing a new rule in its place,[4] the universal holding has been that the marriage of a man and the birth of a child, capable of inheriting, revoked a prior will, if both occurred after the execution thereof,[5] and this rule is said to apply with even greater

---

[1] D.C.Code (1940), § 19—103. "All wills and testaments shall be in writing and signed by the testator, or by some other person in his presence and by his express directions, and shall be attested and subscribed in the presence of the said testator by at least two credible witnesses, or else they shall be utterly void and of no effect; and, moreover, no devise or bequest, or any clause thereof, shall be revocable otherwise than by some other will or codicil in writing or other writing declaring the same. or by burning, canceling, tearing, or obliterating the same by the testator himself or in his presence and by his direction and consent; but all devises and bequests shall remain and continue in force until the same be burned, canceled, torn, or obliterated by the testator or by his direction in the manner aforesaid, or unless the same be altered or revoked by some other will, testament, or codicil in writing, or other writing of the testator signed in the presence of at least two witnesses attesting the same, any former law or usage to the contrary notwithstanding. (Mar. 3, 1901, 31 Stat. 1433, ch. 854, § 1626.)"

[2] Campbell v. Porter, 162 U.S. 478, 482, 16 S.Ct. 871, 40 L.Ed. 1044; Clawans v. Sheetz, 67 App.D.C. 366, 368, 92 F.2d 517, 519.

[3] Act of March 3, 1901, 31 Stat. 1433, supra.

[4] There are now statutes in all the States and Territories which, in one form or another, provide for revocation by operation of law where the testator's domestic situation undergoes a change. 5 Wis.L.Rev. 387.

[5] Baldwin v. Spriggs, infra; Karr v. Robinson, infra; Brush v. Wilkins, supra; Gay v. Gay, 84 Ala. 38, 4 So. 42; Belton v. Summer, 31 Fla. 139. 12 So. 371, 21 L.R.A. 146; Tyler v. Tyler, 19 Ill. 151;

force where the child is born after the death of its father.[6]

There is nothing in the Maryland statutes or decisions which has changed that rule. In Sedwick v. Sedwick, an unreported case decided by the Maryland Court of Appeals in 1844, it was decided that a subsequent marriage and birth of a child revoked a previously executed will.[7] And in Baldwin v. Spriggs, 65 Md. 373, 5 A. 295, the whole question was reviewed at length, the English cases cited and discussed and the conclusion reached, in line with Sedwick v. Sedwick, that where a testator disposes of his estate by will and afterwards marries and has children, the former will is of no effect and is not entitled to probate. This decision in turn was followed by Karr v. Robinson, 167 Md. 375, 173 A. 584, approving Sedwick v. Sedwick and Baldwin v. Spriggs and confirming the rule in those cases that a subsequent marriage and birth of a child amount to an implied revocation of a previously made will. It is quite true that the Maryland Legislature in 1860, in a general revision of the law of wills, struck from the section the concluding words—"any former law or usage to the contrary notwithstanding." But it is also true that those precise words in the English statute had been examined and construed by the English courts long prior to our Revolution as not affecting the revocation of a will by operation of law. The result therefore of the omission of the concluding sentence was no more than the recognition that the omitted words were without significance or effect and that this is true is seen by reference to the Maryland opinions which do not refer to the change, but treat the question as controlled by the English decisions prior to the Revolutionary War.[8] Accordingly the distinction made in Morris v. Foster between the two Maryland statutes and the District's seems now to have been without merit.

We are, therefore, of opinion that in ascribing to the concluding words of the statute a meaning at variance with the construction of the same words by the English courts and the courts of Maryland under the same law, the opinion in Morris v. Foster overlooked the established canon of construction, "that where English statutes, such, for instance, as the Statute of Frauds and the Statute of Limitations, have been adopted into our own legislation, the known and settled construction of those statutes by courts of law has been considered as silently incorporated into the acts, or has been received with all the weight of authority."[9] In England, as we have seen, at the time of the Revolution, the Statute of Frauds, which is today, and by adoption always was, the law in the District of Columbia, had been held as not affecting the then existing common law that marriage and the birth of issue, taken together, amount to an implied revocation of a previously executed will of the husband and father.

Accordingly, the order of the District Court admitting the will of the testator to probate and record is reversed.

Reversed and remanded.

---

Nutt v. Norton, 142 Mass. 242, 7 N.E. 720; Durfee v. Risch, 142 Mich. 504, 105 N.W. 1114, 5 L.R.A.,N.S., 1084, 7 Ann.Cas. 785; Donaldson v. Hall, 106 Minn. 502, 119 N.W. 219. 20 L.R.A.,N.S., 1073, 130 Am.St. Rep. 621, 16 Ann.Cas. 541; Hill v. Hill, 103 Neb. 17, 182 N.W. 578; Hoitt v. Hoitt, 63 N.H. 475, 3 A. 604, 56 Am.Rep. 530; Brown v. Heller, 30 N.M. 1, 227 P. 594; cf. In re Brown's Estate, 139 Iowa 219, 117 N.W. 260; Hoy v. Hoy, 93 Miss. 732, 48 So. 903, 25 L.R.A.,N.S., 182, 136 Am.St.Rep. 548, 17 Ann.Cas. 1137; Graves v. Sheldon, Vt., 2 D.Chip. 71, 15 Am.Dec. 653; In re Battis' Will, 143 Wis. 234, 126 N.W. 9, 139 Am.St.Rep. 1101.

[6] The question is discussed fully in Page on Wills (Lifetime Ed.), sec. 507 et seq., and the cases to sustain the rule are cited there.

[7] The authority for this statement is to be found in the opinion in Baldwin v. Spriggs, 65 Md. 373, 380, 5 A. 295.

[8] For a full discussion of the subject see Mecham & Atkinson, Cases and Materials on Wills and Administration (2d Ed.1939), p. 324; Rollison on Wills (1939), p. 279; Page on Wills (1941 Ed.) p. 900.

[9] McDonald v. Hovey, 110 U.S. 619, 628, 4 S.Ct. 142, 146, 28 L.Ed. 269.