RONALD A. WILLONER AND BARBARA G. DAVIS,
PERSONAL REPRESENTATIVES OF THE ESTATE OF
ALBERT H. DAVIS ET AL. *v.* JUDITH
B. DAVIS ET AL.

[No. 604, September Term, 1975.]

*Decided March 2, 1976.*

The cause was argued before ORTH, C. J., and THOMPSON, GILBERT and MOORE, JJ.

*Benjamin Lipsitz,* with whom were *Reuben Shiling* and *Eleanor J. Lipsitz* on the brief, for appellants.

*George A. Brugger,* with whom were *Beatty & McNamee* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

Albert H. Davis, late of Montgomery County, departed this life on January 19, 1973. Mr. Davis left a widow, three natural children by a prior marriage, an adopted son who is the natural child of Mr. Davis's widow, an estate valued in excess of $400,000, and a will executed thirty-two months prior to his death and prior to the adoption decree. Interpretation of the will by the Circuit Court for Montgomery County sitting as an Orphans' Court, in the light of then Md. Ann. Code art. 93, § 3-301 [1] has given rise to the instant appeal.

---

* Note: *Certiorari* granted, Court of Appeals of Maryland, June 3, 1976.

1. By Laws 1974. ch. 11, § 1, effective July 1, 1974, Md. Ann. Code art. 93

The record shows that the decedent's personal representatives determined that the adopted son, Jeffrey, was a pretermitted child, within the meaning of former art. 93, § 3-301,[2] and they proposed to distribute the estate accordingly. Two of the natural daughters of the late Mr. Davis, disagree with interpretation of the will as made by the personal representatives.

A petition for a declaratory decree was filed by the two daughters (appellees in this Court) in the Circuit Court for Montgomery County, "Sitting as the Orphans' Court." The petition sought to have the Orphans' Court declare that Jeffrey was not entitled to share as a pretermitted child in the proceeds of the estate of Albert H. Davis because Jeffrey had been provided for in the Davis will, albeit, admittedly, as a contingent legatee. The personal representatives and Jeffrey individually (appellants here) responded that while the will did make a contingent bequest to " . . . Jeffery Saraga[3] also known as Jeffery Davis . . ." there was no proviso for Jeffrey in his after acquired capacity of "son" of the late Mr. Davis.

When the matter was called for a hearing, the judge *sua sponte* inquired into his jurisdiction, sitting as an Orphans' Court, to render a declaratory decree. The judge subsequently ruled that an Orphans' Court may grant declaratory relief and construe a will. In this Court the question of jurisdiction of the Orphans' Court was not raised by any party. We, however, must take cognizance of the question of jurisdiction.

The hearing judge arrived at his conclusion that the Orphans' Court could render declaratory decrees on the

---

was repealed in its entirety. Substantially the same language that appeared in former art. 93, § 3-301 is now embodied in Estates and Trusts Article § 3-301, enacted by Laws 1974, ch. 11, § 2, effective July 1, 1974.

**2.** *Id.*

**3.** "Saraga" was Jeffrey's proper surname until the adoption decree. We observe that Jeffrey signed his name on a return receipt postcard "Jeff*rey*" but in the will his name is spelled "Jeff*ery*."

strength of Md. Ann. Code, Courts and Judicial Proceedings Article § 3-403 (a) which provides in pertinent part:

> " . . . Except for the District Court, a court of records within its jurisdiction may declare rights, status, and other legal relations whether or not further relief is or could be claimed."

The judge, believing that an Orphans' Court is a court of record, Maryland Constitution article IV, § 1,[4] held that by virtue of the authority contained in Courts Art. § 3-403 (a), an Orphans' Court is empowered to render declaratory decrees. We, however, have a different view.

Courts Art. § 3-403 (a) does not confer upon Orphans' Courts the right to render declaratory decrees. In fact, Courts Art. § 3-403 (a) is not at all applicable to Orphans' Courts. This is so because Courts Art. § 1-101 (c) provides that the proper noun "Court" as used in the Courts and Judicial Proceedings Article means " . . . the Court of Appeals, Court of Special Appeals, circuit court,[5] and District Court of Maryland, or any of them, unless[6] the context clearly requires a contrary meaning. *It does not include an orphans' court,* or the Maryland Tax Court." (Emphasis supplied).

Maryland Constitution article IV, § 20, was by referendum, held November 3, 1964, amended so as to provide that in Montgomery County, the " . . . judges of the

---

4. Maryland Constitution art. IV, § 1, provides:

"The Judicial power of this State shall be vested in a Court of Appeals, and such intermediate courts of appeal, as shall be provided by law by the General Assembly, Circuit Courts, Orphans' Courts, such Courts for the City of Baltimore, as are hereinafter provided for, and a District Court; all said Courts shall be Courts of Record, and each shall have a seal to be used in the authentication of all process issuing therefrom."

5. Circuit court, as defined in Courts Art. § 1-101 (b), means " . . . the circuit court for a county, the Superior Court of Baltimore City, Court of Common Pleas, Baltimore City Court, Circuit Court of Baltimore City, Circuit Court No. 2 of Baltimore City, and the Criminal Court of Baltimore . . . unless the context clearly requires a contrary meaning."

6. Courts Art. § 3-403 (a) especially excludes the District Court from its ambit.

Circuit Court . . . shall each, alternately and in rotation and on schedules to be established by the said judges, sit as an Orphan's Court for said County, and shall have and exercise all the power, authority and jurisdiction which the present Orphans' Courts now have and exercise, or which may hereafter be prescribed by law." [7] The jurisdiction of an Orphans' Court is spelled out clearly in Md. Ann. Code, Estates and Trusts Article § 2-102. Pursuant to that section of the code an Orphans' Court " . . . may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent", and the court is authorized to summons witnesses. The Legislature chose to limit the Orphans' Courts' powers by incorporating within Estates Art. § 2-102 the prohibition that " . . . [t]he court shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred." As we have seen, not only did the General Assembly not grant to Orphans' Courts the right to enter declaratory decrees or judgments, but, on the contrary, by Courts Art. § 1-101 (c) and § 3-403 (a), the Legislature expressly rendered such courts impuissant to entertain petitions for declaratory relief under any pretext. That a judge of the Circuit Court for Montgomery County, who ordinarily exercises the power to decide declaratory actions, may also sit as a judge of the Orphans' Court for Montgomery County does not mean that when a circuit judge sits as the judge of the Orphans' Court he may exercise his authority and power as a circuit court judge. The law is that when a circuit judge presides in an Orphans' Court proceeding he has no more authority in that case than an Orphans' Court judge, unless additional authority is lawfully conferred by the Legislature. No such authority has, at this point in time, been so conferred. The circuit court judge sitting as an Orphans' Gourt, in the case now before us, was without jurisdiction to adjudicate and declare the respective rights of the parties.

---

7. A similar proviso was adopted for Harford County, by the voters of Maryland at the General Election of November 7, 1972.

Not content, however, to rest upon the supposed, but incorrect, belief that the Orphans' Court could enter declaratory decrees, Judge Philip M. Fairbanks advanced a second reason why, sitting as the Orphans' Court, he could exercise jurisdiction in this matter. The judge opined that "... the precedents in Maryland sustain the power of the Orphans' Court to determine who shall take and what assets shall be included in a given bequest even though these determinations may of necessity involve will construction or statutory construction." We agree.

It is well settled that Orphans' Courts have the power to construe a will or statute if it is necessary to do so when exercising the normal functions within its jurisdiction, as for example, when it is incident to the Orphans' Court determination of who shall take under a will or in the distribution of estate assets. *Childs v. Hoagland*, 181 Md. 550, 30 A. 2d 766 (1943); *Longerbeam v. Iser*, 159 Md. 244, 150 A. 793 (1930); *Redwood v. Howison*, 129 Md. 577, 99 A. 863 (1917); *Roane v. Hollingshead*, 76 Md. 369, 25 A. 307 (1892); *Pole v. Simmons*, 45 Md. 246 (1876); *Hokamp v. Hagaman*, 36 Md. 511 (1872); *Blackburn v. Craufurd*, 22 Md. 447 (1864).

We shall hereinafter treat this case not as a petition for declaratory relief filed in the wrong court, but rather as a petition addressed to the Orphans' Court for a determination as to who shall take under the late Mr. Davis's will, a determination that the Orphans' Court had a right to make incident to its power to distribute. *Childs v. Hoagland, supra.*

Mr. Davis's will, dated May 12, 1970, approximately thirty-two months prior to his death, made two specific legacies totaling eleven hundred dollars ($1100). His wife, Barbara, was bequeathed the household effects, including such things as silver, china, objects of art, and jewelry, if she survived her husband by thirty (30) days. Mrs. Davis, subject to the same thirty-day survival proviso, was granted a one-third interest in the residuary estate. A one-fourth interest in the residuary estate was to go to each of two

daughters, Judith and Stephanie. Three sisters were granted a one-sixth interest in the estate's residue to be divided equally among them. Mrs. Davis, as we have observed, did survive her husband by more than thirty days so that the bequests to her became effective.

The will contained further provisions that were concerned with the distribution of the residuary estate only in the event Mrs. Davis did not survive the testator for the thirty-day period. If she had not survived, fractional distribution was to be jettisoned in favor of percentages. Each of two named daughters would have recieved thirty percent (30%). Five percent (5%) would have gone to a stepson, Steven Saraga; twenty percent (20%) would have been given to the testator's three sisters, " . . . to be divided equally . . ." among them; and the remaining fifteen percent (15%) would have passed to " . . . Jeffery Saraga, also known as Jeffery Davis. . . ." It is this latter contingent bequest that has led to the instant litigation.

Prior to the execution of his will, Mr. Davis had undergone a kidney removal because of a malignancy. In January, 1972, and August of the same year, Mr. Davis was subjected to further major surgical procedure seemingly with concomitant radiation therapy. Except for the periods of hospitalization, Mr. Davis " . . . was able to carry on his active business pursuits and was in full possession of his mental and physical faculties up until immediately before his death. . . ." [8]

On December 7, 1972, the testator " . . . appeared in the Circuit Court for Montgomery County to testify in the proceeding for his adoption of Jeffery Saraga, and that Jeffery Saraga was adopted by the decedent on December 7, 1972, and that Jeffery Saraga survived the decedent." [9]

---

8. Quoted from paragraph 10 of a stipulation filed a month and a half after the April 8, 1975, hearing. The stipulation was filed in accordance with Judge Fairbanks's instructions that the parties prepare and file a stipulation as to the facts in the case.

9. *Id.* at paragraph 11.

The question posed to us is whether the contingent bequest to Jeffrey, made prior to the adoption of Jeffrey by the decedent, places Jeffrey without the scope of the exceptions provided in former Md. Ann. Code art. 93, § 3-301.[10] That section provided:

"No will shall be revoked by the subsequent birth, adoption or legitimation of a child by the testator except under the circumstances referred to in § 4-105 (c).[11] Such child, or the issue (if any, who survive the testator) of any such child who does not survive the testator, shall, however, be entitled to a share in the estate to be determined and paid in accordance with §§ 3-302 and 3-303[12] if:

(a) The will contains a legacy for a child of the testator but makes no provision for a person who becomes a child of the testator subsequent to the execution of the will;

(b) Such child was born, adopted or legitimated subsequent to the execution of the will;

(c) Such child, or his issue, survives the testator; and

(d) The will does not expressly state that such child, or issue, should be omitted."

With respect to Jeffrey, the will provided:

"In case I and my . . . wife shall die or meet death as a result of a common disaster or if my wife fails to survive me for a period of thirty (30) days, I give, devise and bequeath all the rest, residue and

---

10. *See* note 1 *supra.*

11. Former art. 93, § 4-105 (c) was addressed to situations involving "subsequent marriage" followed by birth, adoption or legitimation. It is not applicable to this case.

12. Former art. 93, §§ 3-302 and 3-303 provided respectively for calculation of the amount of the share and the payment thereof.

remainder of my estate, both real and personal, of whatever kind or nature, as follows:

\* \* \*

D. I give, devise and bequeath unto Jeffery Saraga, also known as Jeffery Davis, a fifteen percent (15%) interest if he survives me and has reached the age of twenty-one (21) years."

The will contained provisions relative to a disposition if Jeffrey did not survive the testator and for the creation of a trust if Jeffrey survived the testator,[13] subject to the contingency, and had not attained age twenty-one. If Jeffrey survived the testator but were to die before attaining age twenty-one, the trust remainder was to be paid over to Jeffrey's brother, Steven,[14] when Steven attained age twenty-one or forthwith if Steven had already attained that age.[15]

The ancestor to both the current Maryland statute [16] and its immediate predecessor [17] came into being as a direct result of the opinion of the Court of Appeals in *Karr v. Robinson,* 167 Md. 375, 173 A. 584 (1934). In that case Alphonso Robinson, a widower with two daughters, married Madeline Boyer. Two years thereafter he executed a will. Three years later a daughter was born to Alphonso and his wife. Seven months after that event, Alphonso died. His widow filed a caveat to her late husband's will, asserting that as a result of the birth of a daughter subsequent to the making of the will and the failure of the decedent to provide

---

**13.** The Trustee was directed to " . . . use and apply so much of the net income and of the principal of the Trust as he [the Trustee] may deem necessary for Jeffery's proper education, maintenance and support. . . ."

**14.** Steven Saraga was not adopted. He is not a party to this case.

**15.** The will provided that if Jeffrey predeceased the testator, then Jeffrey's share was to be divided equally between two of the testator's natural daughters. The will did not, however, make any disposition with respect to the share of Jeffrey and of Steven if both survived the testator but died before attaining age twenty-one.

**16.** *See also* note 1 *supra.*

**17.** *Id.* It is this predecessor, Md. Ann. Code art. 93, § 3-301, which we apply in this case.

in the paper writing for the new-born daughter, the "will" was, by operation of law, revoked. The Orphans' Court of Harford County [18] refused to admit the paper writing to probate. On appeal the Court, at length, traced the judicial history of pretermitted children and the effect of their omission upon a will made prior to the birth of the child. The Court noted that originally two elements, (1) subsequent marriage and (2) subsequent birth, were required to be shown before the judicial rule of implicit revocation of a will could be invoked.

The Ecclesiastical Court of England, in *Johnston v. Johnston*, 1 Phillim [Eng. Ecclesiastical Rep.] 447, 161 Eng. Rep. 1039 (1817), held that "subsequent marriage" was not an essential part because the law made strong provision for a widow by way of dower,[19] or as is currently the case, statutory rights.[20] The Court of Appeals, in *Karr*, seemingly followed the reasoning of the Ecclesiastical Court in *Johnston* and held that where no provision is made in a will for an afterborn child, the will " . . . was impliedly revoked," notwithstanding the absence of the "subsequent marriage" element.[21] 167 Md. at 383.

Responding to *Karr v. Robinson, supra*, the Legislature enacted Laws 1937, ch. 303, which codified the pre-*Karr* rule that revocation of a will required a subsequent marriage followed by a subsequent birth.[22]

Former Md. Ann. Code art. 93, § 3-301, which was in effect at the time of Mr. Davis's death, provided, as we have stated, that a will was not revoked by subsequent birth, adoption, or legitimation unless "[t]he will contains a legacy

---

**18.** *See* note 7 *supra.*

**19.** Dower was abolished in Maryland. *See* Estates Art. § 3-202.

**20.** The surviving spouse may elect to take the share he or she might take in intestacy. Estates Art. § 3-203.

**21.** *See* Lentz, "Revocation of a Will by Birth of a Child", 1 *Md. L. Rev.* 32 (1936) for a thorough discussion of *Karr* and prior case law.

**22.** An excellent commentary on Estates Art. § 3-301 appears in the Code immediately following that section. Estates Art. § 4-105 (c) similarly provides that a will is revoked "[b]y the subsequent marriage of the testator followed by the birth, adoption, or legitimation of a child by him. . . ."

for a child of the testator but makes no provision for a person who becomes a child of the testator subsequent to the execution of the will."

The appellants are of the view that former § 3-301 (a) should be interpreted as meaning that if a testator makes no provision for a person as a child of the testator and that person subsequently becomes a child of the testator, the will is a nullity with respect to that person, and he or she should receive the lesser of an intestate share or the value of all the shares of the children who are legatees under the will divided by the total number of children, or their issue, surviving the testator.[23]

We do not, however, read former art. 93, § 3-301 (a) as necessitating that a person who becomes a child of the testator subsequent to the execution of a will must receive a bequest, specifically as a child, in order for the statute to be satisfied. As we see it, a contingent bequest to such person fully meets the legislative intent, inasmuch as mention, in the will, of the person who subsequently becomes a child, patently demonstrates that the person who became a child of the testator was not omitted from the will through negligence or carelessness.

Other states are divided[24] on the resolution of the

---

23. At the time of the testator's death, distribution in such a case was specified in then Md. Ann. Code art. 93, § 3-302, now codified as Estates Art. § 3-302.

24. Under the circumstances where a will mentions a person who later is adopted by the testator, thereby becoming a child of the testator, certain courts have interpreted their pretermitted child statutes as requiring revocation of the will if the will treated the person like a non-adopted person rather than like the testator's child. The most recent of these cases is In Re Will of Stier, 74 Misc. 2d 634, 345 N.Y.S.2d 913 (Sur. Ct. 1973), where the testator mentioned the after-adopted child as "stepdaughter" and used her natural father's surname. The court relied on these facts to determine that the will was drafted without contemplation of her future adoption and, thus, voided the will. See Fried, "Decedents' Estates, 1974 Survey of N. Y. Law," 26 Syracuse L. Rev. 311, 329 (1975). In Re Guilmartin's Estate, 250 App. Div. 762, 293 N.Y.S. 665 (1937), aff'd, 277 N. Y. 689, 14 N.E.2d 627 (1938), reached the same conclusion because the after-adopted child was referred to in the testator's will as " . . . 'my friend, Helen Nierychlewski, daughter of Teodor Nierychlewski' . . . ." In Re Quartararo, 139 So. 2d 277 (La. 1962), applied the precedent of In Re Carbajal, 154 La. 1060, 98 So. 666 (1923), to the facts that the testator's will provided for the after-adopted person but not in the capacity as the testator's child or even in

question here put to us, and it does not appear that
Maryland appellate courts have heretofore come to grips

---

contemplation of eventual adoption. Consequently, the Louisiana Court
invalidated the will so that the after-adopted child would take an intestate
share.

Courts in other jurisdictions have voided testators' wills when the
mention of a person who was later adopted indicated that the testator had
not contemplated adoption at the time the will was executed. In Re Reed's
Estate, 19 N. J. Super. 387, 88 A. 2d 690 (1952) (will reference was "the boy
whom I have raised"); Fulton Trust Co. v. Trowbridge, 126 Conn. 369, 11 A.
2d 393 (1940) (will provided for "Peter Trowbridge, a member of my
household").

We think all the above cases are inapposite because in each there is
specific reference to the after-adopted person by the testator in language
that clearly negates the testator's intent to treat that person as the
testator's child and, instead, indicates intentional treatment of that person
as a non-member of the testator's family.

Contrary conclusions have been reached by some courts even though they
relied upon the similar reasoning of examining the language of the will. A
New York court, in In Re Kelly's Estate, 182 Misc. 481, 44 N.Y.S.2d 438
(Sur. Ct. 1943), determined that the testator's will, executed prior to
adoption of the testator's son, mentioned "my son Richard" and, therefore,
prevented the son from obtaining relief as a pretermitted child under the
New York statute. In a case closely akin to the facts before us, Bowdlear v.
Bowdlear, 112 Mass. 184 (1873), the testator's will included an inheritance
for "Fanny Lincoln" who was adopted by the decedent, Bowdlear, a year
after the will's execution. The court concluded that since the will made a
provision for the testator's after-adopted child and it was not changed in
the eleven years until the testator's death, the pretermitted child statute
did not permit interference with the terms of the will.

Other courts have examined factual postures where natural children,
born after the testator executed a will, have sought revocation by applying
the pretermitted child statute. Although these situations differ from that of
after-adopted children, the reasoning of those cases is instructive.

In Provident Sav. Bank & Trust Co. v. Nash, 75 Ohio App. 493, 62 N.E.2d
736 (1945), the testator's will provided for her "children." Subsequent to
executing the will, four more children were born to the testator. These
afterborn children claimed that they were pretermitted. The court
concluded that the pretermitted child statute was inapplicable to this
situation because the afterborn offspring were part of the class of
"children" and, as such, took equally with the testator's other children. A
similar conclusion was reached in McLean v. McLean, 207 N. Y. 365, 101 N.
E. 178 (1913), where, after the testator's will was executed, a child was born
to the testator. The will made a contingent bequest to the testator's
"children" if the testator's husband did not survive her. The afterborn child
predeceased the testator and the testator's husband. In rejecting the
argument that the afterborn child was omitted from the testator's will, the
court said that the afterborn child was a member of the class of "children"
and the contingent bequest to the testator's "children" was sufficient
mention of the afterborn child so that he was not pretermitted.

Finally, two recent cases have interpreted pretermitted child statutes to
determine their legislative intents. In Re Estate of Markowitz, 126 N. J.
Super. 140, 312 A. 2d 901 (1973), construed the testator's words "to all my
children, me surviving" in a contingency provision to embrace within its

with the issue. Each case in those jurisdictions is, however, determined on its own facts and state statute so that all bear some similarity, on one hand, and, yet, because of the peculiar working of the divers statutes, each case is different from the other. We do not rely upon those divided foreign cases because we believe our statute to be clear and unambiguous. We need not seek guidance from other jurisdictions to interpret our statute inasmuch as Maryland's statute employs certainty of language and relies on a clear purpose.[25] 2A C. Sands, *Sutherland Statutory Construction* § 46.04 (4th ed. 1973). When the statute was originally enacted, as we have already noted, it was designed to overcome the impact of *Karr v. Robinson, supra.* Subsequent legislatures have altered the 1937 Act to the extent that even though a subsequent marriage and subsequent birth will still revoke a will, a child, born, adopted, or legitimated after a will has been executed, may, if he or she meets the criteria of § 3-301, share in his or her parent's estate, without the devastating result occasioned by total will revocation.

In the instant case, the testator specifically provided that his widow would receive a one-third (1/3) interest in his estate. He limited the widow to the one-third, as he stated in his will, because he recognized " . . . that . . . [their] jointly

---

ambit natural children of the decedent's widow who were adopted after the will was made and that as a result, the after-adopted children were not inadvertently omitted from the will. Since the statute was intended to guard against inadvertent omission of children, the statute cannot be employed in this case to void the will. Similarly, in Nicholson v. Sorensen, 517 P. 2d 766 (Alaska 1973), the testator died without mentioning in his will his son or grandchildren. The son predeceased the testator and the grandchildren claimed that they were entitled to share, as pretermitted heirs, in the testator's estate according to the pretermitted heir statute. The court examined the evidence indicating that the testator's son and grandchildren were intentionally omitted from the will and determined that the legislature meant to prevent inadvertent omissions. Consequently, relief under the pretermitted heir statute was denied.

**25.** It is an established rule of statutory construction that " . . . when the meaning of the statutory text itself is 'plain' or 'clear and unambiguous' " no interpretive guides other than the statute are necessary. 2A C. Sands, *Sutherland Statutory Construction* § 46.04, at 54 (4th ed. 1973). *See* Maryland Nat'l Bank v. Comptroller of the Treasury, 264 Md. 536, 287 A. 2d 291 (1972); Falcone v. Palmer Ford, Inc., 242 Md. 487, 219 A. 2d 808 (1966); 2A C. Sands, *Sutherland Statutory Construction* § 45.02 (4th ed. 1973).

held property ... [would] pass outside this Will and as an only child of a wealthy family, she will inherit considerable property." The testator, with respect to a third natural daughter, bequeathed to her, the sum of "One Hundred Dollars ($100.00) and my love and affection." The testator explained his seemingly niggardly gift by stating that "I give to my daughter ... only One Hundred Dollars ($100.00) because she has been well provided for."

When we consider the apparent desire of the testator to provide for his children, both natural and adopted, from the testator's viewpoint of his children's respective needs, we believe Judge Fairbanks correctly found the true intent of the testator.

Knowing of his wife's apparent prospective sizable inheritance, the probability of Jeffrey's eventual sharing to some extent in that inheritance, the improbability of his natural children so sharing, one can readily infer, as the trial judge did, from the testator's will and course of conduct that Jeffrey's contingent bequest was exactly what the testator had in mind. It was only in the event that the testator's widow did not survive the testator by thirty days that Jeffrey was to participate in his adoptive father's estate, and even then not to the extent of the two natural daughters who are the principal beneficiaries under the will.

We hold that a judge of the Circuit Court for Montgomery County, sitting as an Orphans' Court, correctly construed the will of Albert H. Davis. He did so as a necessary exercise of his jurisdiction and authority to determine who should share under that will and to what extent. We further hold that an Orphans' Court has no authority to render declaratory decrees. We, therefore, treat the order of the Orphans' Court not as a declaratory decree, but rather as an order of distribution according to the testamentary scheme and, as so treated, we affirm.

*Order affirmed.*

*Costs to be paid by the estate of Albert H. Davis.*